PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

AES Sparrows Point LNG, LLC;
Mid-Atlantic Express, LLC,
            *Plaintiffs-Appellants,*

v.

James T. Smith, Jr., County
Executive, Baltimore County;
William J. Wiseman, III, Zoning
Commissioner, Baltimore County;
Baltimore County, Maryland,
            *Defendants-Appellees.*

No. 07-1615

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Richard D. Bennett, District Judge.
(1:07-cv-00325-RDB)

Argued: January 30, 2008

Decided: May 19, 2008

Before WILLIAMS, Chief Judge, SHEDD, Circuit Judge, and
Liam O'GRADY, United States District Judge
for the Eastern District of Virginia,
sitting by designation.

Reversed and remanded by published opinion. Judge Shedd wrote the
opinion, in which Judge O'Grady joined. Chief Judge Williams wrote
a separate opinion concurring in the judgment.

**COUNSEL**

**ARGUED:** Jeffrey A. Lamken, BAKER BOTTS, L.L.P., Washington, D.C., for Appellants. John Edward Beverungen, County Attorney, BALTIMORE COUNTY OFFICE OF LAW, Towson, Maryland, for Appellees. **ON BRIEF:** James W. Bartlett, III, Scott H. Phillips, SEMMES, BOWEN & SEMMES, Baltimore, Maryland; Randolph Q. McManus, Mark Cook, Michael G. Pattillo, Jr., Adam J. White, Rachel M. McKenzie, BAKER BOTTS, L.L.P., Washington, D.C., for Appellants. Jeffrey Grant Cook, Assistant County Attorney, BALTIMORE COUNTY OFFICE OF LAW, Towson, Maryland, for Appellees.

---

**OPINION**

SHEDD, Circuit Judge:

AES Sparrows Point LNG, LLC and Mid-Atlantic Express, LLC (together, "AES") brought this suit against Baltimore County, Maryland, its executive, and its zoning commissioner (together, "the County") seeking a declaration that County Bill 9-07, which prohibits the siting of any liquefied natural gas ("LNG") terminal in the County's Chesapeake Bay Critical Area, is preempted by the Natural Gas Act ("NGA"). The district court granted summary judgment to the County, concluding that Bill 9-07 is saved from preemption because it "is within the delegated authority of the State of Maryland and the County under the Coastal Zone Management Act" ("CZMA") and "is enforceable as part of the State of Maryland's Coastal Management Program." J.A. 271, 284. AES now appeals. We hold that Bill 9-07 is not part of Maryland's federally approved Coastal Zone Management Plan ("CMP"), and therefore is not saved from preemption as an exercise of Maryland's rights under the CZMA. Accordingly, we reverse the judgment of the district court and remand for further proceedings.

I

Before turning to the facts of this case, we describe briefly the rele-

vant statutory framework. The Natural Gas Act, 15 U.S.C. §§ 717 *et seq.*, requires a party seeking to construct an LNG terminal to first obtain authorization from the Federal Energy Regulatory Commission ("FERC"). 15 U.S.C. § 717b(a). In order to do so, applicants must comply with the NGA's requirements as well as complete FERC's extensive pre-filing process. *See* 18 C.F.R. § 157.21. FERC must then consult with the appropriate state agency on numerous state and local issues. *See* 15 U.S.C. § 717b-1(b). The NGA also contains two provisions, added in 2005, that are pertinent to this appeal. The first provides that "[FERC] shall have the exclusive authority to approve or deny an application for the siting, construction, expansion, or operation of an LNG terminal." 15 U.S.C. § 717b(e)(1).[1] The second (the "Savings Clause") provides that "nothing in the [NGA] affects the rights of States under" the CZMA and two other federal statutes.[2] 15 U.S.C. § 717b(d).

The CZMA, 16 U.S.C. §§ 1451, *et seq.*, was designed "to encourage states to develop land-use planning programs that will preserve, protect, and restore the environment of their coastal zones." *Shanty Town Assocs. Ltd. P'ship v. EPA*, 843 F.2d 782, 793 (4th Cir. 1988). To that end, the CZMA authorizes states to create CMPs setting forth the state's "objectives, policies, and standards to guide public and private uses of lands and waters in the coastal zone." 16 U.S.C. § 1453(12). The CZMA sets forth detailed requirements that a CMP must meet in order to obtain federal approval. *See* 16 U.S.C. §§ 1454-55. Once a state's CMP is approved by the National Oceanic and Atmospheric Administration ("NOAA"),[3] the state is eligible to

---

[1]The NGA defines "LNG terminal" to include:

> [A]ll natural gas facilities located onshore or in State waters that are used to receive, unload, load, store, transport, gasify, liquefy, or process natural gas that is imported to the United States from a foreign country, exported to a foreign country from the United States, or transported in interstate commerce by waterborne vessel.

15 U.S.C. § 717a(11).

[2]The Clean Air Act (42 U.S.C. §§ 7401, *et seq.*) and the Federal Water Pollution Control Act (33 U.S.C. §§ 1251, *et seq.*). Neither statute is relevant to this appeal.

[3]The CZMA vests this approval authority with the Secretary of Commerce, who has in turn delegated it to NOAA. *See* Dep't of Commerce Organizational Order 10-15, § 3.01(u) (May 28, 2004).

receive federal grants for the purpose of administering its coastal zone management programs. 16 U.S.C. § 1455. In addition, the CZMA requires that any federal agency activity affecting the state's coastal zone "be carried out in a manner which is consistent to the maximum extent practicable with the enforceable policies of approved [CMPs]." 16 U.S.C. § 1456(c)(1). The CZMA therefore gives states with approved CMPs the right to engage in "consistency review," permitting them to conditionally veto federally permitted projects that are not consistent with "the enforceable policies of the state's approved [CMP]," subject to a final override by the Secretary of Commerce. 16 U.S.C. § 1456(c)(3)(A); *see generally Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 590-91 (1987) (explaining consistency review). Finally, the CZMA specifies the procedures a state must follow in order to amend its CMP, which include presentation of any such amendment to NOAA for approval. *See* 16 U.S.C. § 1455(e).

II

The facts of this case are not disputed. To meet the demand for natural gas in the Mid-Atlantic region, AES proposes to build an LNG import terminal with the necessary transmission pipeline at Sparrows Point, a heavily industrialized coastal area on the Chesapeake Bay in the County. LNG, which is natural gas that has been cooled to -260° Fahrenheit to form a liquid, occupies one six-hundredth of the volume of natural gas in its gaseous state. AES' proposed terminal would receive LNG, store it, and regasify it for transportation and delivery to residential, commercial, and industrial end users. Because LNG can be economically transported by sea from gas-producing areas worldwide to many domestic and foreign markets, LNG import terminals are typically sited in coastal areas with shipping access to foreign countries.

In 2006, responding to public opposition to the siting of an LNG terminal at Sparrows Point, the County Council approved Bill 71-06, which amended the County's Zoning Regulations to provide that an LNG terminal can only be constructed with a "special exception" and must be located at least five miles from residential zones and 500 feet from businesses. J.A. 79. This zoning amendment would have prevented AES from constructing an LNG facility at Sparrows Point.

Following passage of Bill 71-06, AES brought suit in federal court, arguing that Bill 71-06 was preempted under the Supremacy Clause of the United States Constitution by the NGA's grant of exclusive authority to FERC to site LNG terminals. The district court agreed and enjoined the County from enforcing the zoning ordinance. *See AES Sparrows Point LNG, LLC v. Smith*, 470 F. Supp. 2d 586, 601 (D. Md. 2007)("*AES I*").

The County responded in 2007 by passing Bill 9-07, which takes a different approach to banning LNG facilities at Sparrows Point. Instead of restricting LNG terminal siting based on proximity to residential and commercial areas, Bill 9-07 makes the restriction on LNG facilities a matter of coastal concern by amending the County's Zoning Regulations to include LNG terminals among the prohibited uses in the Chesapeake Bay Critical Area.[4] Because the proposed Sparrows Point site is located within the County's Chesapeake Bay Critical Area,[5] Bill 9-07 prevents AES from constructing an LNG facility there.

AES then filed the present suit, seeking essentially the same injunctive and declaratory relief as in *AES I*. The County responded by requesting that Maryland's Critical Area Commission for the Chesapeake and Atlantic Coastal Bays (the "Critical Area Commission") amend the County's Chesapeake and Atlantic Coastal Bays Critical Area Protection Program ("CAPP") to include Bill 9-07's restriction on LNG terminal siting in coastal areas. The CAPP was enacted pursuant to Md. Code Ann., Nat. Res. §§ 8-1801 *et seq.*, and is one of over 50 state laws identified in Maryland's CMP as effectuating Maryland's coastal management policies.[6] Before the district

---

[4]Bill 9-07's definition of "Liquefied Natural Gas Facility" is substantially the same as that of the NGA. *See* J.A. 107.

[5]The Chesapeake Bay Critical Area includes, subject to certain statutory exclusions, "[a]ll waters of and lands under the Chesapeake Bay and its tributaries to the head of tide as indicated on the State wetlands maps, and all State and private wetlands designated under Title 16 of the Environment Article" and "[a]ll land and water areas within 1,000 feet beyond the landward boundaries of State or private wetlands and the heads of tides designated under Title 16 of the Environment Article." Md. Code Ann., Nat. Res. § 8-1807(a).

[6]NOAA approved Maryland's CMP in 1978, and in 1986 approved an amendment to the CMP to incorporate the CAPP. Prior to its purported amendment by Bill 9-07, Maryland's CMP contained no ban on the siting of LNG terminals in coastal zones.

court rendered its decision, the Critical Area Commission approved the adoption of Bill 9-07 into the CAPP. Maryland, however, never presented Bill 9-07 to NOAA for approval by that agency, pursuant to the CZMA's procedures for amending state CMPs.

The district court concluded that Bill 9-07 was not preempted by the NGA. Reasoning that by adopting Bill 9-07 into the County's CAPP, Maryland also had incorporated it into its CMP, the district court concluded that Bill 9-07 represented an exercise of Maryland's "delegated authority" under the CZMA and was thus saved from preemption by the NGA's Savings Clause. The district court also held that Bill 9-07 does not facially discriminate against or unduly burden interstate and foreign commerce in violation of the Commerce Clause of the United States Constitution. Accordingly, the district court denied AES' request for declaratory and injunctive relief and granted summary judgment in favor of the County. This appeal followed.

## III

AES' primary contention on appeal, as below, is that Bill 9-07 is preempted by the NGA. We review this legal question *de novo. Cox v. Shalala*, 112 F.3d 151, 153 (4th Cir. 1997).[7]

## A.

The Supremacy Clause of the United States Constitution provides that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Under the Supremacy Clause, state law that conflicts with federal law is "without effect." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516

---

[7]We find no merit in the County's contention that AES has failed to exhaust its administrative remedies before bringing suit. The doctrine of exhaustion requires parties to exhaust "*prescribed* administrative remed-[ies]" prior to seeking relief in a federal court. *See Woodford v. Ngo*, 126 S. Ct. 2378, 2385 (2006) (emphasis added). The County identifies no mandatory administrative remedy that AES has failed to exhaust in this case.

(1992) (internal quotation omitted). Nevertheless, in evaluating arguments based on the Supremacy Clause, we begin with "the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purposes of Congress." *Id.* (internal quotation and citation omitted). As always, we look first to the language of a statute to determine Congress' intent. *Sprietsma v. Mercury Marine*, 537 U.S. 51, 62-63 (2002). When that intent is "explicitly stated in the statute's language," conflicting state law is expressly preempted. *Cipollone*, 505 U.S. at 516 (internal quotation omitted).

B.

The NGA provides that FERC "shall have the *exclusive* authority to approve or deny an application for the siting, construction, expansion, or operation of an LNG terminal." 15 U.S.C. § 717b(e)(1) (emphasis added). Viewed in isolation, this grant of exclusive authority to FERC leaves state and local governments with no residual power to site LNG terminals or to take actions that would effectively approve or deny such siting. *See AES I*, 470 F. Supp. 2d at 598. Accordingly, unless a state law prohibiting the siting of LNG terminals is exempted from § 717b(e)(1)'s preemptive effect by some other provision of federal law, it is unenforceable under the Supremacy Clause.

The County argues that the NGA's Savings Clause operates to save Bill 9-07 from preemption by § 717b(e)(1). Specifically, the County contends that because Bill 9-07 is part of Maryland's Critical Area Laws, which in turn are one component of the state's CMP, the County's ban on the siting of LNG terminals in the Chesapeake Bay Critical Area is the exercise of its rights under the CZMA.

We reject the County's argument. The Savings Clause exempts "rights of States under" the CZMA from the preemptive force of FERC's exclusive authority to site LNG terminals. The mechanism the CZMA provides for the exercise of those rights — whatever their content or source — is a federally approved CMP. Thus, the County has no authority under the CZMA to enact a ban on LNG terminals unless, at a minimum, that ban is enacted pursuant to the procedures

established by the CZMA. Accordingly, our inquiry must focus first on whether Bill 9-07 has been incorporated into Maryland's CMP.

The CZMA specifies the manner by which a state may amend its approved CMP. Any state wishing to amend its approved plan must "promptly notify the Secretary [of Commerce] of any proposed amendment, modification, or other program change and submit it for the Secretary's approval." 16 U.S.C. § 1455(e)(1). An amendment becomes effective only after the Secretary approves it or fails to take action within the prescribed time. "[A] coastal state may not implement any amendment, modification, or other change as part of its approved management program unless the amendment, modification, or other change is approved by the Secretary." 16 U.S.C. § 1455(e)(3)(A). Further, "[a] proposed amendment, modification, or change which . . . is not finally approved . . . shall not be considered an enforceable policy" of the CMP. 16 U.S.C. § 1455(e)(3)(B).

The district court concluded that Bill 9-07 did not constitute an amendment to Maryland's CMP, but rather only "the implementation of it at the local level." J.A. 282-83. We disagree. "Amendment" for purposes of the CZMA is defined in 15 C.F.R. § 923.80(d):

> For purposes of this subpart, amendments are defined as substantial changes in one or more of the following coastal management program areas:
>
> > (1)   Uses subject to management;
> >
> > (2)   Special management areas;
> >
> > (3)   Boundaries;
> >
> > (4)   Authorities and organization; and
> >
> > (5)   Coordination, public involvement and the national interest.

We have no difficulty concluding that Bill 9-07 is an "amendment" of Maryland's CMP because it imposes a categorical ban on LNG ter-

minals in the Chesapeake Bay Critical Area that the CMP did not previously contain. This, in our view, constitutes a "substantial change" in the "uses subject to management" by the CMP. It also implicates the "national interest" in the "the siting of facilities such as energy facilities which are of greater than local significance." 16 U.S.C. § 1455(d)(8).

The County does not dispute that it has never presented Bill 9-07 to NOAA for approval as required by the CZMA. The CZMA makes clear, however, that the mere adoption of Bill 9-07 into the County's CAPP by Maryland's Critical Area Commission is not sufficient to make Bill 9-07 part of Maryland's CMP.[8] Were it otherwise, a state could unilaterally amend its CMP in violation of the CZMA's requirement of federal approval.

Until NOAA approves Bill 9-07 or fails to take action after being presented with it, it is not part of Maryland's CMP and cannot be saved from preemption by the NGA's Savings Clause.[9] Therefore,

---

[8]Indeed, even "routine program changes" that do not rise to the level of formal amendments must be presented to NOAA so that NOAA may ensure they are not in fact amendments. Until a state has done so, even such routine changes in a CMP cannot serve as the basis for a state's conditional veto of a federally permitted project in consistency review. *See* 15 C.F.R. § 923.84.

[9]We do not reach the question of whether Bill 9-07 would fall within the Savings Clause if it had been approved by NOAA and were properly incorporated into Maryland's CMP, and we express no opinion on this issue. There is some indication that NOAA would not approve an LNG terminal ban as an amendment to a state's CMP, *see* Coastal Zone Management Act Federal Consistency Regulations, 71 Fed. Reg. 788, 823-24 (Jan. 5, 2006) (discussing the intersection of the NGA and CZMA and stating that "NOAA will not approve State policies that on their face contain requirements that are preempted by Federal law."). However, NOAA could change its position or simply decline to decide at all which state policies are or are not preempted. Indeed, NOAA has approved LNG terminal bans in CMPs in the past, at least before the NGA was amended in 2005 to give FERC exclusive authority to site LNG terminals. *See New Jersey v. Delaware*, 128 S. Ct. 1410, 1426 (2008) (noting that Delaware's CMP contains an LNG terminal ban approved in 1979). If NOAA changes course, we might at that time be called upon to define the mean-

Bill 9-07 is preempted by the NGA's grant of exclusive authority to FERC "to approve or deny an application for the siting, construction, expansion, or operation of an LNG terminal," 15 U.S.C. § 717b(e)(1), and may not be enforced by the County to prevent the construction of an LNG terminal at Sparrows Point.[10]

IV

For the foregoing reasons, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*

WILLIAMS, Chief Judge, concurring in the judgment:

Because I conclude that Baltimore County Bill 9-07 is expressly preempted by the Natural Gas Act under the Supremacy Clause, I would reverse the judgment of the district court. I therefore concur in the judgment. I do not agree, however, with the suggestion by the majority that Bill 9-07's express liquefied natural gas terminal ban, although "preempted" today, might be "saved" from preemption tomorrow if approved by the National Oceanic and Atmospheric Administration as an amendment to Maryland's Coastal Zone Management Plan. Majority Op. at 9-10 and n.9. I cannot see how legislation like Bill 9-07, which *expressly* bans liquefied natural gas terminal siting in the Chesapeake Bay Critical Area, can ever be a "right[ ] of States under" the Coastal Zone Management Act.

_____

ing of "rights . . . under" the CZMA or to decide the question of whether the NGA's Savings Clause operates to save an otherwise preempted ban on LNG terminals. Those questions, however, are not before us today, and we therefore decline to address them.

[10]In light of our conclusion, we need not address AES' contention that Bill 9-07 also violates the Dormant Commerce Clause.