PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

EQUAL RIGHTS CENTER, a not for
profit corporation; AMERICAN
ASSOCIATION OF PEOPLE WITH
DISABILITIES, a not for profit
corporation; UNITED SPINAL
ASSOCIATION, a not for profit
corporation,

*Plaintiffs,*

and

ARCHSTONE MULTIFAMILY SERIES I
TRUST; ARCHSTONE,

*Defendants-Appellants,*

v.

NILES BOLTON ASSOCIATES, a
Georgia Corporation,

*Defendant-Appellee,*

and

CLARK REALTY BUILDERS, LLC, a
Maryland Corporation; VIKA
INCORPORATED, a Maryland
Corporation; MEEKS PARTNERS,
f/k/a Kaufman Meeks and
Partners, a Texas partnership;
NATIONAL MULTI HOUSING COUNCIL,

*Defendants.*

No. 09-1453

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(1:04-cv-03975-AMD)

Argued: January 27, 2010

Decided: April 19, 2010

Before NIEMEYER, KING, and SHEDD, Circuit Judges.

---

Affirmed by published opinion. Judge Shedd wrote the opinion, in which Judge Niemeyer and Judge King joined.

---

**COUNSEL**

**ARGUED**: David M. Gossett, MAYER BROWN, LLP, Washington, D.C., for Appellants. Charles E. Rogers, SMITH, CURRIE & HANCOCK, LLP, Atlanta, Georgia, for Appellee. **ON BRIEF:** Andrew A. Nicely, Gary A. Winters, MAYER BROWN, LLP, Washington, D.C., for Appellants. Russell S. Drazin, JACKSON & CAMPBELL, PC, Washington, D.C., for Appellee.

---

SHEDD, Circuit Judge:

Archstone Multifamily Series I Trust and Archstone (collectively referred to as "Archstone") appeal an order of the district court granting summary judgment in favor of Niles Bolton Associates, Inc. ("Niles Bolton"). Archstone also appeals the district court's denial of its motion to amend its

complaint to include a claim for contribution. In granting summary judgment, the court concluded that Archstone's state-law claims are preempted by the Fair Housing Act ("FHA"), 42 U.S.C. § § 3601 *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § § 12101 *et seq.*; in denying the motion to amend, the court concluded that allowing Archstone to amend its complaint would be prejudicial to Niles Bolton and, in any event, futile. For the following reasons, we affirm.

## I.

Archstone develops and owns multi-family housing projects throughout the United States. Archstone hired Niles Bolton as its architect to design a number of multi-family apartment buildings on the East Coast in the 1990s. In 2004, the Equal Rights Center and several other disability advocacy groups ("Equal Rights plaintiffs") filed this lawsuit against Archstone, Niles Bolton, various contractors, and other architects used by Archstone, alleging that these entities failed to design and construct 71 apartment buildings so that they would be accessible to persons with disabilities in compliance with the FHA and ADA.

Archstone and the Equal Rights plaintiffs entered into a Consent Decree to settle the lawsuit covering the 71 apartment communities, 15 of which were designed by Niles Bolton. Under the settlement, Archstone was required, *inter alia*, to retrofit the 71 properties to make them compliant with the FHA and ADA and pay the plaintiffs $1.4 million to cover damages, attorneys' fees, and expenses. Archstone has retrofitted a majority of the 71 properties and is in the process of retrofitting the remainder. According to Archstone, the costs of the retrofits at the sites designed by Niles Bolton exceed $2.5 million. Niles Bolton was not a party to the settlement between Archstone and the Equal Rights plaintiffs. However, Niles Bolton later entered into a separate Consent Decree with

the Equal Rights plaintiffs that did not include any admission of liability.

Following settlement with the Equal Rights plaintiffs, Archstone filed a cross-claim against Niles Bolton asserting four state-law causes of action: (1) express indemnity; (2) implied indemnity; (3) breach of contract; and (4) professional negligence. The express indemnity claim focuses on clauses in the contracts between Niles Bolton and Archstone in which Niles Bolton promised to "make good any defects in its services resulting from the failure of the Architect or any of its Consultants to perform their respective services in a manner that is commensurate with the professional standard of care" and to "indemnify" Archstone "from and against all losses, claims, liabilities, injuries, damages and expenses, including attorneys' fees and litigation costs . . . arising out of or resulting from or in connection with, the performance, or failure to perform, by the Architect or its employees." J.A. 37, 51-52. Niles Bolton and Archstone also agreed that "designs or specifications furnished by the Architect found to be negligent will be promptly corrected by the Architect at no cost to the Owner, and the Architect will be responsible to the Owner for all damages, if any, resulting from such defective designs or specifications." J.A. 148. They further agreed that "[a]ny designs or specifications furnished by the Architect which contain errors in coordination of details or dimensional errors will be promptly corrected by the Architect at no cost to the Owner". *Id.*

Archstone's implied indemnity claim rests on the principle that Niles Bolton "bears a substantially greater share of responsibility for any failure of the Properties to be designed according to the requirements of the FHA and the ADA, given Niles Bolton's superior knowledge, skill and involvement in the design of the properties." J.A. 369. The breach of contract claim, as alleged by Archstone, arises because Niles Bolton breached the warranties under its contracts with Archstone by failing to design properties that are in compliance

with the FHA and ADA. Finally, Archstone's professional negligence claim results from Niles Bolton's alleged "failure to exercise the level of professional skill and care required of an architect" to design the properties in question in a manner that conforms to the requirements of the FHA and ADA. J.A. 370. For these state-law causes of action, Archstone sought (1) to recover damages, attorney's fees and costs paid by Archstone to the Equal Rights plaintiffs, (2) to recover costs it incurred retrofitting those portions of the Properties improperly designed by Niles Bolton, and (3) to be indemnified for costs that Archstone will incur to modify the remainder of the properties designed by Niles Bolton that have yet to be retrofitted.

After Archstone filed its cross-claim, the parties conducted discovery for approximately three years. During the course of discovery, Niles Bolton sought to compel Archstone to disclose evidence regarding Archstone's allocation of damages among itself, Niles Bolton, and any other party. Archstone resisted these discovery requests by arguing that it was seeking damages for the 15 of 71 properties that Niles Bolton designed and *all* related settlement amounts, attorneys' fees, and costs paid to the Equal Rights plaintiffs, as well as the costs of retrofitting the 15 properties designed by Niles Bolton. The district court affirmed the magistrate judge's grant of a protective order to Archstone because the allocation of damages was irrelevant to a claim for indemnity. The district court further noted that "there is no suggestion in [the magistrate's discovery rulings] that the court perceived there to be a contribution claim presented by Archstone." *Equal Rights Center v. Archstone Smith Trust, et al.*, 603 F.Supp.2d 814, 819 (D.Md. 2009).

Three weeks after the close of discovery and on the eve of the deadline for dispositive motions, Archstone filed a motion for leave to amend its cross-claim to include a claim for contribution. Under the amended complaint, Archstone sought to recover contribution on the same grounds as its original

claims. In a memorandum order, the district court denied the motion for leave to amend on the ground that it would result in prejudice to Niles Bolton. According to the court, because a claim for contribution requires an analysis of the relative fault of the parties while a claim for indemnification does not, amending the complaint to add this claim would require additional discovery of the type previously rejected by the court because of its view that Archstone was seeking only indemnification rather than contribution. Because Archstone did not move for leave to amend the complaint until after three years of discovery and on the eve of dispositive motions, the court held that the amendment would prejudice Niles Bolton. Further, the court held that even if there were no prejudice, a state-law claim for contribution would be futile because it would be preempted under federal law.

The district court also granted summary judgment in favor of Niles Bolton. The court reasoned that although styled as state-law claims for relief, Archstone's causes of action were indemnity and *de facto* indemnity claims for violations of the FHA and ADA. Because no right to indemnification exists under these laws, and because allowing indemnification on the state-law claims asserted by Archstone would be antithetical to the purposes of the FHA and ADA, the court held that federal law preempted these claims under the doctrine of conflict, or obstacle, preemption.

Archstone timely appealed the grant of summary judgment and the denial of its motion for leave to amend. We address each issue in turn.

## II.

## A.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We review the district court's order granting summary judgment *de novo*. *Jennings v. U.N.C.*, 482 F.3d 686, 694 (4th Cir. 2007) (en banc). Likewise, we also review the district court's preemption determination *de novo*. *AES Sparrow Point LNG, LLC v. Smith*, 527 F.3d 120, 125 (4th Cir. 2008).

Archstone argues that the district court erred because its state-law claims are not antithetical to Congress' purpose in enacting the FHA and ADA. Archstone claims that no conflict or obstacle exists because its cross-claim does not impose requirements that make compliance with federal law impossible. Further, it claims that it only seeks partial indemnity because it seeks to recover only the damages caused by Niles Bolton. Archstone also contends that the court erred in finding its breach of contract and negligence claims are preempted as *de facto* claims for indemnification. Archstone asserts that its claims are not derivative because it is not attempting to enforce the duties that Niles Bolton owed to the Equal Rights plaintiffs, but rather is seeking to enforce the duties Niles Bolton owed to Archstone. Having conducted a *de novo* review of the record, we hold the district court did not err in finding these claims preempted.

### B.

Obstacle preemption applies "where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). The Supreme Court has found state-law claims preempted under obstacle preemption where a state-law claim "interferes with the methods by which the federal statute was designed to reach [its] goal." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 103 (1992) (internal quotation marks and citation omitted). We have explained that

> [a] decision about [obstacle preemption] requires the court independently to consider national interests and their putative conflict with state interests. . . . [P]reemption under [an obstacle preemption] theory is more an exercise of policy choices by a court than strict statutory construction.

*Abbot v. Am. Cyanamid Co.*, 844 F.2d 1108, 1113 (4th Cir. 1988). Obstacle preemption can apply not only to positive enactments of state law but also to state tort claims. *See*, *e.g.*, *Geier v. Am. Honda Motor Co.*, 529 U.S. 861 (2000) (holding that negligence action against a manufacturer was preempted because it conflicted with a federal agency standard).

In finding Archstone's state-law claims preempted, the district court correctly used the guidance we set forth in *Baker, Watts & Co. v. Miles & Stockbridge*, 876 F.2d 1101 (4th Cir. 1989) (en banc). In *Baker, Watts & Co.*, we considered whether the Securities Exchange Act of 1933 preempted a state-law claim for indemnity. In holding the indemnification claim is preempted, we analyzed whether the claim represented an obstacle to the regulatory goals of the federal law. We explained that "Congress ha[d] not provided a right to indemnification in the federal securities laws under any circumstances." *Id.* at 1108. Furthermore, we emphasized the total nature of a claim for indemnity, concluding that "it would run counter to the basic policy of the federal securities laws to allow a securities wrongdoer . . . to shift its *entire* responsibility for federal violations on the basis of a collateral state action for indemnification." *Id.* (emphasis added). As we explained, "[t]he goal of the 1933 and 1934 Acts is preventive as well as remedial, and 'denying indemnification encourages the reasonable care required by the federal securities provisions.'" *Id.* (internal citations omitted).

We believe this reasoning applies with equal force to an indemnity claim brought under the FHA and ADA. To begin, as with the securities laws at issue in *Baker, Watts & Co.*, the

goals of the FHA and ADA are "regulatory rather than compensatory." The principal purpose of the ADA is to "(1) . . . provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities [and] (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b). The primary purpose of the FHA is "to provide . . . for fair housing throughout the United States." 42 U.S.C. § 3601. Furthermore, compliance with the ADA and FHA, as conceded by Archstone, is "non-delegable" in that an owner cannot "insulate himself from liability for . . . discrimination in regard to living premises owned by him and managed for his benefit merely by relinquishing the responsibility for preventing such discrimination to another party." *See Walker v. Crigler*, 976 F.2d 900, 904 (4th Cir. 1992). Under these principles, it is clear that, like the securities laws at issue in *Baker, Watts & Co.*, the regulatory purposes of the FHA and ADA would be undermined by allowing a claim for indemnity.

Here, Archstone sought to allocate the full risk of loss to Niles Bolton for the apartment buildings at issue. Allowing an owner to completely insulate itself from liability for an ADA or FHA violation through contract diminishes its incentive to ensure compliance with discrimination laws. If a developer of apartment housing, who concededly has a non-delegable duty to comply with the ADA and FHA, can be indemnified under state law for its ADA and FHA violations, then the developer will not be accountable for discriminatory practices in building apartment housing. Such a result is antithetical to the purposes of the FHA and ADA. Accordingly, we find Archstone's indemnification claims are preempted.[1]

---

[1]Archstone argues that because 28 C.F.R. § 36.201(b) permits "allocation of responsibility for complying with the obligations" of the ADA, indemnity is not preempted. We find this argument unpersuasive. The history of this regulation demonstrates that this allocation provision is unique to the landlord-tenant relationship and does not impact the relationships between architects, builders, and other parties. *See* Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 56 Fed. Reg. 35544, 35555-56 (July 26, 1991).

We also hold that the district court correctly held Arch-stone's state-law breach of contract and negligence claims to be *de facto* indemnification claims and, thus, preempted. Our conclusion is buttressed by Archstone's argument in its brief, and repeated at oral argument, that it seeks — regardless of how it labels its claim — to recover 100% of the losses at the 15 sites where Niles Bolton provided architectural services. Such a claim for relief is a *de facto* claim for indemnification derived from violations of these federal statutes. Although Archstone suggests that these claims are not derivative because it only seeks to enforce duties Niles Bolton owes to Archstone, we find that this argument fails because Archstone really seeks to have Niles Bolton pay *all* damages that arise under the FHA and ADA at these sites.

Therefore, we agree with the district court that these *de facto* indemnification state-law claims by Archstone are pre-empted under federal law. *See Baker, Watts & Co.*, 876 F.2d at 1108 (holding that plaintiff's pendent common law actions are preempted to the extent that they are *de facto* claims for indemnification). Accordingly, we affirm the district court's grant of summary judgment in favor of Niles Bolton.

### III.

We must next decide whether the district court erred by denying Archstone leave to amend its complaint to include a claim for contribution. We review the district court's denial of a motion to amend a complaint under the deferential abuse of discretion standard. *See Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 476 (4th Cir. 2006). Although leave to amend should be "freely give[n] when justice so requires," Fed. R. Civ. P. 15(a)(2), a district court has discretion to deny a motion to amend a complaint, so long as it does not outright refuse "to grant the leave without any justifying reason." *Foman v. Davis*, 371 U.S. 178, 182 (1962). A district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted

in bad faith, or the amendment would be futile. *See Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc). Here, the district court gave two bases for denying Archstone's motion to amend — prejudice and futility. Because we believe the district court did not abuse its discretion on at least one of these bases, we affirm.

As to the first basis — prejudice — the district court held that the addition of a contribution claim after the close of a three-year long discovery process and on the eve of the deadline for dispositive motions would have required it to reopen discovery and thereby prejudice Niles Bolton. *See Equal Rights Center*, 603 F.Supp.2d at 820. In finding that the addition of a claim for contribution would change the character of litigation, the court stated:

> Niles Bolton correctly infers from the proposed claim for contribution that Archstone is essentially admitting liability for some of the violations at the Niles Bolton-designed properties Archstone developed and operates. This admission, according to Niles Bolton, would require further discovery into the nature of each and every alleged violation (under myriad states' laws) to which Archstone is impliedly conceding liability.

> In other words, as the case had been framed in the more than three years before the motion to amend was filed, Niles Bolton was alleged, by virtue of the claim for indemnification, to be solely liable under the FHA and the ADA for all of the violations in the complexes it designed. . . . To permit an eleventh hour change in litigation theory to one of partial liability would mean that Niles Bolton has been prejudiced in its ability to assess rationally its exposure to a damages award in favor of Archstone, as its litigation plan did not contemplate such an atomistic battlefield. Furthermore, Niles Bolton's settlement

posture would of necessity have been quite different three years ago (before the expenditure of large sums for attorney's fees and litigation expenses) had it known that it was not facing a liability in excess of 15/71 of $1.5 million plus some share of the cost of retrofitting, but something considerably below that amount. . . .

Unquestionably, any reasonable litigant in Niles Bolton's position would have sought specific discovery into how Archstone believed it appropriate to allocate fault for the violations alleged by Plaintiffs, *e.g.*, was Niles Bolton 25% at fault; 35%; 75%? Plainly, in the face of a claim solely for indemnification, no litigant would have been motivated to undertake such discovery, and Niles Bolton has not done so.

Indeed, Niles Bolton attempted in some ways to obtain certain discovery that, indisputably, would have been relevant to a contribution claim but not to an indemnity claim. Archstone resisted such discovery and both Magistrate Judge Gesner (who managed discovery) and I sustained Archstone's objections, each of us on the understanding that Archstone was pursuing *indemnity*.

*Id.* at 818-819 (emphasis in original).

We hold that the district court did not abuse its discretion in finding the proposed amendment would be unduly prejudicial to Niles Bolton. We find compelling the court's analysis that the amendment — coming so belatedly — would change the nature of the litigation and, would therefore, prejudice Niles Bolton.[2] *See Deasy v. Hill*, 833 F.2d 38, 42 (4th Cir.

---

[2]We need not reach the district court's futility analysis because we find the district court's prejudice analysis is a sufficient basis to affirm the denial of the motion to amend. Accordingly, we do not reach the question of whether a state-law claim for contribution is preempted under federal law.

1987) (noting that "[b]elated claims which change the character of litigation are not favored").[3]

Archstone argues on appeal that its proposed amendment would not prejudice Niles Bolton because it would not change the character of the litigation. Specifically, Archstone argues that it seeks the same relief that it has sought throughout the litigation and no further discovery would be needed — hence, no prejudice would result for Niles Bolton. *See, e.g.*, Appellant's Br. 50 (arguing that it "seeks the same relief under both its indemnity and contribution theories"). Indeed, at oral argument, Archstone conceded that its contribution claim would seek to have Niles Bolton cover 100% of the damages at the 15 properties in question. Archstone's position demonstrates a fundamental misunderstanding of the difference between contribution and indemnification. *See Baker, Watts & Co.*, 876 F.2d at 1103 (noting that "[i]ndemnification, of course, involves shifting the entire loss from one wrongdoer to another; contribution requires each wrongdoer to pay his proportionate — or *pro rata* — share of the adverse judgment"). As presented on appeal, the claim which Archstone presents in its amended complaint is a *de facto* indemnification claim, and such a claim is preempted under federal law. Therefore, allowing Archstone to amend under these circumstances to include a so-called contribution claim is, in any event, futile.

---

[3]We have repeatedly affirmed denials of motions to amend which change the character of the litigation late in the proceedings. *See Smith v. Angelone*, 111 F.3d 1126, 1135 (4th Cir. 1997) (holding that given the delay in amending, the late hour of the motion to amend, and the burdens it would impose on the opposing party, the district court did not abuse its discretion in denying the motion to amend); *see also Deasy*, 833 F.2d at 40 (affirming the district court's discretion to deny the motion to amend because of the undue delay and prejudice caused to the opposing party); *Barnes Group, Inc. v. C&C Products, Inc.*, 716 F.2d 1023, 1035 n. 35 (4th Cir. 1983) (affirming the district court's denial of defendant's motion to amend).

Accordingly, we affirm the district court's denial of the motion to amend.[4]

## IV.

For the foregoing reasons, we affirm both the district court's grant of summary judgment in favor of Niles Bolton and its denial of Archstone's motion to amend its complaint.

*AFFIRMED*

---

[4]At oral argument, there was discussion concerning whether the district court abused its discretion in denying this amendment because the original complaint included the word "contribution" in one of the counts. However, any such argument has been waived because it was not raised in Archstone's opening brief. *See United States v. Jones*, 308 F.3d 425, 427 n.1 (4th Cir. 2002) (holding that an argument not raised in the opening brief is waived).