**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 12-1145**

MAUREENE E. STANLEY, Individually and as Personal
Representative of the Estate of Charles F. Stanley,
deceased,

        Plaintiff - Appellant,

    v.

THE HUNTINGTON NATIONAL BANK, a banking corporation,

        Defendant - Appellee.

Appeal from the United States District Court for the Northern
District of West Virginia, at Clarksburg. Frederick P. Stamp,
Jr., Senior District Judge. (1:11-cv-00054-FPS-JSK)

Submitted: June 15, 2012        Decided: August 21, 2012

Before TRAXLER, Chief Judge, and NIEMEYER and KING, Circuit
Judges.

Affirmed by unpublished per curiam opinion.

Edward R. Kohout, Morgantown, West Virginia, for Appellant.
Joshua S. Rogers, David M. Thomas, DINSMORE & SHOHL LLP,
Morgantown, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Plaintiff Maureene Stanley ("Stanley") appeals the district court's order granting a motion for summary judgment filed by the defendant The Huntington National Bank ("Huntington") on her claims for breach of contract and for violations of the West Virginia Consumer Credit and Protection Act (the "WVCCPA"), W. Va. Code §§ 46A-1-101 through 46A-8-102. Stanley also appeals the district court's order denying her motion for leave to amend her complaint. We affirm.

I.

In March 2009, Stanley and her husband, Charles Stanley ("Charles"), opened a $100,000 Personal Credit Line ("PCL") account with Huntington that was secured by their residence and other real estate. At the closing, the Stanleys were offered and purchased debt cancellation protection on their loan. Debt cancellation is described as

> a two-party, in-house, product offered by Huntington in which Huntington agrees to cancel or forgive all or part[] of a qualifying customer's indebtedness upon the occurrences of certain events such as death and the diagnosis of a terminal medical condition.

J.A. 139 (internal quotation marks omitted). The debt cancellation product carried a "maximum protection of [the] Outstanding Credit Line Balance up to: $50,000." J.A. 111.

2

To obtain the debt cancellation product, the Stanleys were required to execute a Personal Credit Line Agreement Rider for Debt Cancellation (the "Rider"), confirming that they were eligible for the protection. The Rider asks a series of medical and employment questions including whether the applicant has been diagnosed with, or treated for, any "brain, nervous system or mental/neurological disorder," and disqualifies any individual who has been diagnosed with or treated for such a condition during the preceding two-year period. J.A. 111. Section 4.0 of the Rider provides Huntington with the right to terminate the Rider and deny benefits if the applicant made a material misrepresentation in connection with the loan agreement or Rider:

> We require You to furnish evidence of Your eligibility for the protections You selected. If You make any material misrepresentation or misrepresentations to Us in connection with this Rider or the PCL Agreement, whether in writing or otherwise (i) protection will be voided; (ii) We will credit to the Outstanding Credit Line Balance the amount of the monthly Fees You have paid; and (iii) We will deny any Debt Cancellation Protection request You file under this Rider. A misrepresentation is material if knowledge by Us of the truth of the facts misrepresented would have led to Our rejection of Your eligibility for the selected protections based upon criteria in effect on the Protection Effective Date.

J.A. 113.

It is undisputed that when the PCL Agreement and Rider were completed and signed, Charles had been diagnosed with, and was

3

being treated for, Parkinson's disease. However, the Stanleys both signed the Rider stating that neither of them had been diagnosed with, or treated for, such a condition at any time within the past two years. Charles died on November 29, 2009, from pneumonia. Parkinson's disease was listed on his death certificate as an underlying cause of death.

On December 21, 2009, Stanley submitted a claim form to Huntington, requesting benefits under the debt cancellation product. After reviewing Charles' death certificate and consulting with his physician, Huntington denied benefits based upon the misrepresentation in the Rider.

Stanley filed this civil action in state court, asserting claims for breach of contract, breach of the implied duty of good faith and fair dealing, breach of the WVCCPA, and punitive damages. Huntington timely removed the action to the district court. Pursuant to Federal Rule of Civil Procedure 16(b), the district court issued a scheduling order requiring, in part, that all motions to amend pleadings be filed by August 1, 2011.

On September 23, 2011, Stanley filed a motion to amend her complaint to include a count for fraud in the inducement, based upon alleged misrepresentations made by Huntington's loan officer, Ms. Briana Arbogast, at the time of the loan closing. The district court ruled that Stanley had not demonstrated "good cause" for her failure to timely request the amendment under the

4

scheduling order, and denied the motion. See Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").

On October 17, 2011, Huntington filed a motion for summary judgment on all counts. The district court granted Huntington's motion and denied Stanley's motion for reconsideration. This appeal followed.

II.

A.

We review the district court's grant of summary judgment de novo, see Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988), and examine the evidence in the light most favorable to the nonmoving party while drawing all reasonable inferences in her favor, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c).

B.

Count I of Stanley's complaint asserts a claim for breach of contract. Stanley argues that the district court erred in

granting summary judgment on this claim because a genuine issue of material fact exists as to whether she and Charles misrepresented Charles' health when the Rider was signed. We disagree.

1.

Under West Virginia law, contract interpretation is a question of law and requires a court to determine the meaning and legal effect solely from the document's contents. Where the contract language is clear and unambiguous, it "cannot be construed and must be given effect and no interpretation thereof is permissible." Berkeley Cnty. Pub. Serv. Dist. v. Vitro Corp. of Am., 162 S.E.2d 189, 200 (W. Va. 1968); see also Kanawha Banking & Trust Co. v. Gilbert, 46 S.E.2d 225, 232-33 (W. Va. 1947). A contract is ambiguous only if it is "reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning." Mylan Labs. Inc. v. Am. Motorists Ins. Co., 700 S.E.2d 518, 524 (W. Va. 2010) (per curiam).

Here, the district court held that the Rider was clear and unambiguous, and that it gave Huntington the right to deny debt protection coverage based upon the Stanleys' representation that Charles did not suffer from a neurological disorder. We agree.

The Rider clearly provides for debt cancellation up to $50,000, subject to the borrowers' confirmation that they are

eligible.  Section II of the Rider, titled "CONFIRM that You are eligible," asks a series of questions pertaining to the borrowers' health status.  Question 1(b) asks if the applicant has been treated for specific conditions in the past two years including any "brain, nervous system or mental/neurological disorder."  J.A. 111.  The Rider plainly states that "Any YES answer in Section 1 means You are not eligible for any protection."  J.A. 111.  The Stanleys answered "no" to this question, although it is undisputed that Charles had been diagnosed with and was being treated for Parkinson's disease at the time.  Both Stanley and Charles signed the Rider, at the bottom of the same page, confirming that they had "receiv[ed]" and "carefully read all of the pages of th[e] Rider."  J.A. 111.

Section 4.0 of the Rider gives the bank the right to void the protection and deny benefits in any case of material misrepresentation on the part of the borrower.  Thus, under the clear and unambiguous language of the Rider, Huntington was within its rights to deny payment based upon the Stanleys' misrepresentation regarding Charles' health.

2.

Stanley does not dispute that the representation regarding Charles' medical condition on the application was false.  Nor does she assert that the language of the Rider itself is ambiguous.  Rather, she contends that she is entitled to the

7

benefits of the Rider based upon verbal statements that she claims were made to and by Huntington's loan officer, Ms. Arbogast, prior to or contemporaneously with the Rider's execution.

Specifically, Stanley avers that she and Charles informed Ms. Arbogast that Charles suffered from Parkinson's disease, and that Ms. Arbogast told them that Charles' condition did not disqualify him and that their loan would be repaid in full if they were ever to file a valid claim. Stanley further asserts that Ms. Arbogast completed the Rider, representing that Charles did not suffer from a disqualifying condition, and that Stanley did not read the Rider before signing it. Stanley contends that this extrinsic evidence creates an ambiguity in the Rider and demonstrates that a genuine issue of material fact exists as to whether she and Charles actually misrepresented Charles' health on the Rider. We disagree.

As the district court correctly noted, the parol evidence rule bars the admission of oral statements made prior to or contemporaneously with the execution of a clear and unambiguous contract, unless there are allegations of fraud, mistake, or material misrepresentation. See Kanawha Banking, 46 S.E.2d at 232-33. The "written contract is considered to merge all of the negotiations and representations made prior to its execution, and extrinsic evidence is not available to alter or interpret

language which is otherwise plain and unambiguous on its face." Iafolla v. Douglas Pocahontas Coal Corp., 250 S.E.2d 128, 135 (W. Va. 1978).

Here, the Rider is clear and unambiguous, and Stanley's complaint makes no allegations of fraud, mistake, or material misrepresentation. Accordingly, the alleged oral statements made at the time of execution of the Rider cannot be relied upon to vary, contradict, or explain its terms. Stanley's claim that she had a reasonable expectation of insurance, based upon these statements, likewise fails. Stanley cannot avoid the unambiguous terms of the Rider by claiming that she did not read it before signing it. See Boggs v. Camden-Clark Mem. Hosp. Corp., 693 S.E.2d 53, 63 (W. Va. 2010) ("This Court has made clear that, as a general rule, . . . the doctrine of reasonable expectations is limited to those instances in which the policy language is ambiguous." (internal quotation marks omitted)). The doctrine of reasonable expectations is simply not applicable in these circumstances. Accordingly, we affirm the grant of summary judgment on Stanley's breach of contract claims.

C.

Count II of Stanley's complaint alleges a violation of the WVCCPA, which provides a cause of action to "[a]ny person who purchases or leases goods or services and thereby suffers any ascertainable loss of money or property, real or personal, as a

result of the use or employment by another person," W. Va. Code § 46A-6-106(a), of certain "[u]nfair methods of competition and unfair or deceptive acts or practices," W. Va. Code § 46A-6-104. The elements for a colorable claim brought under this section include "unlawful conduct by the seller, an ascertainable loss on the part of the consumer, and a causal connection between the ascertainable loss and the [seller's] conduct." White v. Wyeth, 705 S.E.2d 828, 835 (W. Va. 2010). Huntington asserts that Stanley failed to provide the requisite notice to bring a claim under the Act and that she failed to properly allege the claim with the requisite particularity.

Before a claim can be brought pursuant to the WVCCPA, a plaintiff must comply with a mandatory condition precedent set forth in § 46A-6-106(b), which states that:

> [n]otwithstanding the provisions of subsection (a) of this section, no action may be brought pursuant to the provisions of this section until the consumer has informed the seller or lessor in writing and by certified mail of the alleged violation and provided the seller or lessor twenty days from receipt of the notice of violation to make a cure offer . . . .

W. Va. Code Ann. § 46A-6-106(b). The district court held that Stanley's failure to comply with this mandatory prerequisite bars her claim. We agree.

Stanley sent two letters to Huntington dated February 2010 and March 2011, requesting a status update on her claim and seeking documents, which she claims was "effective" notice under

10

the Act. However, the letters do not assert a violation of the WVCCPA and do not meet the mandatory notice prerequisite to filing suit. Thus, Stanley's claim fails because she did not provide the required notice to Huntington under § 46A-6-106(b). Accordingly, we affirm the district court's dismissal of Stanley's WVCCPA claim.

## III.

Finally, Stanley appeals the district court's order denying her motion to amend her complaint to add a claim for fraud in the inducement based upon the misrepresentations made by Ms. Arbogast during the loan closing. We review the district court's order for an abuse of discretion. See Equal Rights Center v. Niles Bolton Assocs., 602 F.3d 597, 603 (4th Cir. 2010).

Under Federal Rule of Civil Procedure 15(a)(2), Stanley could "amend [her] pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). "Although leave to amend should be freely given when justice so requires, a district court has discretion to deny a motion to amend a complaint, so long as it does not outright refuse to grant the leave without any justifying reason." Equal Rights Ctr., 602 F.3d at 603 (internal quotation marks, alteration and citation omitted). "A district court may deny a motion to amend

11

when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." Id.

In order to ensure efficient case management, however, Rule 16(b) requires the district court to issue scheduling orders, see Fed. R. Civ. P. 16(b)(1) & (2), which, among other deadlines, "must limit the time to . . . amend the pleadings, complete discovery, and file motions," Fed. R. Civ. P. 16(b)(3)(A). The "schedule may be modified only for good cause and with the judge's consent." See Fed. R. Civ. P. 16(b)(4). "Therefore, after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings." Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008).

Stanley filed her complaint in March of 2011. Huntington timely removed the action to the district court and answered, asserting the parol evidence rule as a defense. Pursuant to Federal Rule of Civil Procedure 16(b), the district court issued a scheduling order requiring, in part, that all motions to amend pleadings be filed by August 1, 2011, and that all dispositive motions be filed by October 17, 2011.

On September 22, 2011, at a motions hearing regarding expert witnesses, Huntington's counsel advised the court of its intent to file a motion for summary judgment "based upon the

12

clear language of the subject contract and the parol evidence rule." J.A. 51. Stanley contends that she was surprised by Huntington's position that oral statements and other extrinsic evidence at the time of the closing were inadmissible under the parol evidence rule, and she filed an untimely motion to amend her complaint to include a count for fraud in the inducement the following day.

The district court held that Stanley's "explanation does not address the diligence required to show good cause under Rule 6(b)" and pointed out that Stanley had "offer[ed] no reasons as to why her fraud in the inducement claim could not have been asserted through a timely amendment pursuant to th[e] Court's scheduling order." J.A. 51. We cannot say that the district court abused its discretion by finding that the plaintiff failed to demonstrate "good cause" to amend her complaint. Huntington clearly asserted the parol evidence rule as a defense in its answer several months prior to the motions deadline, and Stanley's motion appears to be little more than a belated reaction to Huntington's intent to file a motion for summary judgment based upon the clear and unambiguous language of the subject contract. Consequently, we affirm the district court's denial of the motion for leave to amend.

13

IV.

For the foregoing reasons, we affirm the district court's order granting Huntington's motion for summary judgment and denying Stanley's motion for leave to amend her complaint. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>