[Cite as *Epcon Community Franchising, L.L.C. v. Wilcox Dev. Group, L.L.C.*, 2022-Ohio-3442.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Epcon Community Franchising, LLC,    :

     Plaintiff-Appellant,      :

                    No. 21AP-674

v.                       :      (C.P.C. No. 21CV-502)

Wilcox Development Group, LLC et al.,    :

                    (ACCELERATED CALENDAR)

     Defendants-Appellees.     :

D E C I S I O N

Rendered on September 29, 2022

**On brief:** *Arnold & Clifford, LLP*, *Tiffany L. Carwile*, and *James E. Arnold*, for appellant. **Argued:** *Tiffany L. Carwile*.

**On brief:** *Zeiger, Tigges & Little LLP*, *Marion H. Little, Jr.,* and *Matthew S. Zeiger*, for appellees. **Argued:** *Matthew S. Zeiger*.

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Plaintiff-appellant, Epcon Community Franchising, LLC ("Epcon"), appeals from the December 9, 2021 decision and entry of the Franklin County Court of Common Pleas granting the motion to dismiss, filed pursuant to Civ.R. 12(B)(6), of defendants-appellees, Wilcox Development Group, LLC, Charleston Lake II, LLC, and Streetsboro Investments Partners, LLC (collectively, "Wilcox"). For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} This dispute arises out of litigation initiated in October 2012 by the Office of Fair Housing and Opportunity against Epcon, a franchisor of residential homes for

community development projects, for alleged violations of the Fair Housing Act, 42 U.S.C. Section 3601-19 (the "FHA"), at 32 multi-family housing communities developed in Ohio. (Am. Compl. ¶ 13, ¶ 27.) The instant matter concerns violations alleged by the United States at three condominium communities developed by Wilcox under contractual agreements with Epcon. More specifically, the United States alleged that certain elements of the design and construction of the condominium communities did not satisfy the accessibility requirements of the FHA. *Id.* at ¶ 27.

{¶ 3} After years of negotiations between Epcon and the Department of Justice ("DOJ"), the parties reached a tentative agreement requiring court approval. *Id.* at ¶ 35-41. In October 2019, the DOJ filed a complaint against Epcon in the Southern District of Ohio. *Id.* at ¶ 41. On March 25, 2020, the court signed a consent order submitted by the parties. *Id.* at ¶ 45. The consent order required Epcon to pay over $2.5 million in specified damages, with $2.2 million to be used to establish an accessibility retrofit fund to correct certain deficiencies at the communities, the majority of which were within the exterior portions of the communities. *Id.* at ¶ 42-44; 48-49. The consent order released all claims under the FHA against Epcon and Epcon's parent entities, subsidiaries, franchisees, and affiliates. *Id.* at ¶ 47.

{¶ 4} On January 25, 2021, Epcon filed a complaint in the Franklin County Court of Common Pleas, alleging a single claim for contribution under Ohio Revised Code section 2307.25(A). *Id.* at ¶ 53-59. Wilcox responded by filing a motion to dismiss pursuant to Civ.R. 12(B)(6), whereupon Epcon filed an amended complaint with the same allegations and the same claim for contribution under R.C. 2307.25(A). (*See* Mar. 2, 2021 Mot. to Dismiss; Am. Compl.) On April 7, 2021, Wilcox filed a motion to dismiss the amended complaint. (*See* Apr. 7, 2021 Mot. to Dismiss.)

.

{¶ 5}   On December 9, 2021, the trial court issued its decision and entry granting the April 7, 2021 motion to dismiss.  In its decision and entry, the trial court stated that "Epcon's claim [for contribution] fails as a matter of law to the extent they assert *de facto* claims for contribution arising from FHA violations."  (Decision & Entry at 6.)

{¶ 6}   On December 14, 2021, Epcon filed this timely appeal.

## II. Assignment of Error

{¶ 7}   Epcon has assigned one error for our review:

> The trial court erred in dismissing Epcon's contribution claim
> as preempted by the Fair Housing Act.

## III.  Law and Analysis

### A.  Standard of Review

{¶ 8}   Federal preemption is a question of law. *Merck Sharp & Dohme Corp. v. Albrecht*, ____ U.S. ____, 139 S.Ct. 1668, 1680 (2019).  Questions of law are reviewed de novo.  *State v. Codeluppi*, 139 Ohio St.3d 165, 2014-Ohio-1574, ¶ 9.

### B.  Federal Preemption of State Law

{¶ 9}   The issue before this court is straightforward: does the FHA preempt state law claims for contribution, including Ohio's statutorily provided cause of action for contribution set forth in R.C. 2307.25?  Despite the straightforward nature of the issue, however, we have discerned no controlling case law on it—neither the Supreme Court of Ohio nor this court has previously spoken on the issue.  Nor does it appear that any other Ohio appellate courts have addressed it.

{¶ 10} This court has previously discussed in detail the law governing federal preemption generally in *State ex rel. Yost v. Volkswagen Aktiengesellschaft*, 10th Dist. No. 19AP-7, 2019-Ohio-5084.  In *Volkswagen*, we stated:

.

Whether federal law preempts state law is a question of law, and therefore we must apply a de novo standard of review without deference to the trial court's decision. *Bailey v. Manor Care of Mayfield Hts.*, 8th Dist. No. 99798, 2013-Ohio-4927, ¶ 12. The doctrine of federal preemption arises from the Supremacy Clause of the United States Constitution, which provides that "the Laws of the United States * * * shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Constitution, Article VI, cl. 2. Pursuant to the Supremacy Clause, the United States Congress has the power to preempt state laws. *In re Miamisburg Train Derailment Litigation*, 68 Ohio St.3d 255, 259 (1994).

There are three ways federal law can preempt state law: (1) where federal law expressly preempts state law (express preemption); (2) where federal law has occupied the entire field (field preemption); or (3) where there is a conflict between federal law and state law (conflict preemption[1]). *Norfolk S. Ry. Co. v. Bogle*, 115 Ohio St.3d 455, 2007-Ohio-5248, ¶ 7. Express preemption occurs when Congress explicitly defines the extent to which its enactments preempt state law. *English v. Gen. Elec. Co.*, 496 U.S. 72, 78 (1990). In the case of field preemption, "state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively. Such an intent may be inferred from a 'scheme of federal regulation * * * so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' or where an Act of Congress 'touches a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.' " *Id.* at 79, quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). Conflict preemption occurs "where it is impossible for a private party to comply with both state and federal requirements," or "where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *English* at 79, quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby v. Natl. Foreign Trade Council*, 530 U.S. 363, 373 (2000).

---

[1] "Conflict preemption" is also known as "obstacle preemption." *See English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990), citing *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).

.

In determining whether federal law preempts state law, " '[t]he purpose of Congress is the ultimate touchstone.' " *Malone v. White Motor Corp.*, 435 U.S. 497, 504 (1978), quoting *Retail Clerks Internatl. Assn. v. Schermerhorn*, 375 U.S. 96, 103 (1963); *see Riverside v. State*, 190 Ohio App.3d 765, 2010-Ohio-5868, ¶ 22 (10th Dist.) ("The Supreme Court has framed preemption analysis as asking whether Congress intended to exercise its constitutionally delegated authority to set aside state laws."). "Congress' intent, of course, primarily is discerned from the language of the pre-emption statute and the 'statutory framework' surrounding it. * * * Also relevant, however, is the 'structure and purpose of the statute as a whole,' * * * as revealed not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." (Internal citations omitted.) *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486 (1996).

Additionally, a court reviewing possible preemption must consider federalism as part of that analysis. Federalism, which is "central to the constitutional design, adopts the principle that both the National and State Governments have elements of sovereignty the other is bound to respect." *Arizona v. United States*, 567 U.S. 387, 398 (2012). "[B]ecause the States are independent sovereigns in our federal system," the United States Supreme Court has "long presumed that Congress does not cavalierly pre-empt state-law causes of action." *Medtronic* at 485.

*Volkswagen* at ¶ 12-15.

{¶ 11} Notwithstanding the lack of Ohio case law on the specific issue before us, several federal court decisions have found that state law claims for contribution are preempted or otherwise barred by the FHA, including one from the Southern District of Ohio. In *Miami Valley Fair Hous Ctr., Inc. v. Campus Village Wright State, LLC*, S.D. Ohio No. 3:10cv230, 2012 U.S. Dist. LEXIS 137922 (Sept. 26, 2012), the district court specifically determined that "Campus Village Cross-Claimants' contention that the FHA does not prohibit them from pursuing indemnification and contribution claims under Ohio

.

law also lacks merit. *The Court finds such state law claims preempted under the doctrine of obstacle preemption.*" (Emphasis added.) *Campus Village Wright State* at *16.

**{¶ 12}** Other federal cases that have held or otherwise have found that the FHA preempts or otherwise bars state law claims for contribution include *Miami Valley Fair Hous Ctr., Inc. v. Steiner + Assocs., Inc., et al.*, S.D. Ohio No. 3:08cv00150, 2010 U.S. Dist. LEXIS 63915, (May 13, 2010)[2]; *United States v. Dawn Properties.*, 64 F.Supp.3d 955, 960 (S.D.Miss.2014) ("the Court agrees with those federal courts to have addressed this issue that *the FHA* and the ADA *preempt state law claims for both indemnity and contribution*") (emphasis added); *United States v. Murphy Dev., LLC*, M.D. Tenn. No. 3:08-0960, 2009 U.S. Dist LEXIS 100149, at *2 (Oct. 27, 2009) (emphasis added) ("Third-Party Plaintiffs' state-law claims for express or implied indemnity and/or contribution will also be dismissed with prejudice because they are de facto claims for indemnity and contribution that are preempted by federal law. *Such derivative indemnity and contribution claims are barred because allowing recovery under state law for indemnity and/or contribution would frustrate the achievement of Congress' purposes in adopting the FHA and the ADA,*" citing *Equal Rights Ctr. v. Archstone Smith Trust*, 603 F.Supp.2d 814, 824 (D.Md.2009)).

**{¶ 13}** The United States District Court for the Southern District of New York aptly discussed the reasoning for barring state law claims for contribution-like claims via federal preemption thus:

> The FHA penalizes actions that, in any way, "make unavailable" any dwelling to any person "because of race, sex, familial status,

---

[2] "On appeal, the United States Court of Appeals for the Sixth Circuit reversed and remanded *Steiner* based on issues relating to personal jurisdiction. *Miami Valley Fair Hous. Ctr., Inc. et al. v. Steiner & Assocs., Inc. et al.*, 483 Fed. Appx. 67, 2012 U.S. App. LEXIS 10316, 2012 WL 1815964 at *1 (6th Cir.2012). The Sixth Circuit declined to address whether the FHA permits or preempts state-law claims in contribution or indemnification." *Campus Village Wright State* at *13-14.

.

or national origin." 42 U.S.C. § 3604(a). The results-oriented phrase "otherwise make unavailable" "signal[s] a shift in emphasis from an actor's intent to the consequences of his actions." *Tex. Dept. of Hous. [& Cmty. Affairs v. Inclusive Communities, Inc.]*, 135 S. Ct. [2507], 2519 [192 L. Ed.2d 514 (2015)]. In other words, the FHA was not designed simply to punish those who discriminate, but also to remove even unintentional barriers to the availability of housing. Thus, one can violate the statute through discriminatory intent or merely disparate impact. *See id.* at 2523. *Enforcing a state statute that compensates an FHA violator would undermine Congress's purpose in achieving the result of the availability of fair housing. * * *.*

The stated goal of the FHA is "regulatory rather than compensatory," *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 601-02 (4th Cir.2010), and the statutory scheme is "preventive as well as remedial," *id.* at 601. In other words, the language and structure of the statute evidence Congress's intent to achieve the result of fair housing not only by remedying obstacles but also via deterrence.

Congress's stated intent also limits what avenues are available to a party that violates the FHA. *Because of the statute's broad language and Congress's intent to end discriminatory housing practices, state law procedures cannot be used to circumvent Congress's regulatory scheme. See Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*, 721 F.3d 54, 65 (2d Cir.2013) (state law contribution claims are inapplicable for fines for violation of federal laws); *Niles Bolton*, 602 F.3d at 601-02 (allowing FHA violator to shift liability to third party via state law indemnification claim would run counter to aims of FHA); *Equal Rights Ctr. v. Archstone Smith Tr.*, 603 F. Supp.2d 814, 822 (D. Md.2009) (claim for indemnity or contribution not allowed under FHA because "the unmistakable thrust of Supreme Court precedent is that Congress' selection (and non-selection) of remedies in comprehensive remedial federal statutes, especially anti-discrimination statutes, is not a proper subject with which federal or state courts ought to tinker"), *aff'd sub nom. Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597 (4th Cir. 2010); *KBL Corp. v. Arnouts*, 646 F. Supp.2d 335, 341 (S.D.N.Y.2009) (a "plaintiff cannot use New York State common law as an end-around to make a claim for contribution that it could not make under the federal statutory scheme"); *cf. Feltenstein v. City Sch. Dist. of New Rochelle*, No. 14-CV-7484, 2015 U.S. Dist. LEXIS 170123, 2015 WL

10097519, at *3 (S.D.N.Y. Dec. 18, 2015) ("[T]he [ADA] * * * remedial scheme * * * which does not include provisions for indemnification and contribution * * * would be frustrated by the availability of such remedies under state law, because it would contravene Congress' intent to hold accountable all who actually violate the terms of the statute.").

(Emphases added.) *S & R Dev. Estates, LLC v. Town of Greenburgh*, 336 F.Supp.3d 300, 310-11 (S.D.N.Y.2018). Although the court in *S & R Dev. Estates* was concerned with a New York statute providing for compensation for a restrictive covenant that had been deemed unenforceable under the FHA (*see* New York Real Prop. Acts Law Section 1951(2) (McKinney 2018)), the reasoning is wholly relevant to the within matter. It still concerned compensating a violator of the FHA via a state-law contribution-like claim against a third party.

{¶ 14} All of the foregoing cases are persuasive authority that we rely upon in reaching the conclusion that the FHA preempts state law claims for contribution brought pursuant to R.C. 2307.25 via conflict/obstacle preemption. As set forth above, "where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' " that state law is preempted by federal law. *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990), quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby v. Natl. Foreign Trade Council*, 530 U.S. 363, 373 (June 19, 2000).

{¶ 15} Here, we find that a state law claim for contribution is an obstacle to the full purposes and objectives of Congress in the passage of the FHA because it circumvents the judgment of the federal government in choosing who to prosecute for violations of the FHA, and it permits a violator to shift at least some of the responsibility for the violation to

.

another party. If the DOJ, HUD, and/or the Office of Fair Housing and Opportunity had wanted to hold Wilcox responsible for any alleged violations of the FHA, Wilcox would have been named as a defendant in the original complaint. It could not have been unknown to the federal plaintiffs that Wilcox was a franchisee of Epcon, and thus was directly involved in developing the three communities at issue in this case. But for reasons known only to the federal plaintiffs, the decision was made *not* to name Wilcox in the complaint. For Epcon to now be able to engage in an end-run around the FHA–which all parties acknowledge and concede does not provide for a right of contribution–by turning to state law would very much frustrate the purposes and objectives of the FHA.

{¶ 16} In short, if Congress had wanted to provide for a right of contribution for violations of the FHA, it would have included such a right as a provision in the FHA itself– yet it did not. Therefore, based on the foregoing reasoning, we find that the FHA preempts state law claims for contribution, including Ohio's statutorily provided cause of action for contribution set forth in R.C. 2307.25, and we find that Epcon's claim for contribution is barred as a matter of law.

{¶ 17} Accordingly, the trial court did not err in dismissing Epcon's contribution claim as preempted by the Fair Housing Act, and Epcon's sole assignment of error is overruled.

## IV. Disposition

{¶ 18} For the foregoing reasons, we overrule Epcon's sole assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER and JAMISON, JJ., concur.

_____

.