[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Epcon Communities Franchising, L.L.C. v. Wilcox Dev. Group, L.L.C.*, Slip Opinion No. 2024-Ohio-4989.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-4989

EPCON COMMUNITIES FRANCHISING, L.L.C., APPELLANT, *v.* WILCOX DEVELOPMENT GROUP, L.L.C., ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Epcon Communities Franchising, L.L.C. v. Wilcox Dev. Group, L.L.C.*, Slip Opinion No. 2024-Ohio-4989.]

*Civil law—Preemption—Judicial restraint—Trial court erred by dismissing case on theory that if a state-law cause of action for contribution existed, it was preempted by federal law—No party had argued for federal preemption, constitutional avoidance prevents courts from answering a constitutional question unless necessary to do so, and whether federal preemption applies is a hypothetical question—Judgment reversed and cause remanded to trial court.*

(No. 2022-1404—Submitted September 13, 2023—Decided October 18, 2024)

APPEAL from the Court of Appeals for Franklin County,
No. 21AP-674, 2022-Ohio-3442.

_____

DEWINE, J., authored the opinion of the court, which KENNEDY, C.J., and FISCHER, DONNELLY, and DETERS, JJ., joined. STEWART, J., concurred in judgment only. BRUNNER, J., concurred in judgment only, with an opinion.

**DEWINE, J.**

{¶ 1} We accepted this case under a proposition of law that presented a question about federal preemption of an Ohio statute. A property developer that had settled claims with the United States Department of Justice for alleged violations of the Fair Housing Act ("the FHA"), 42 U.S.C. 3601 et seq., sought to assert a state-law claim for contribution against other companies that had been involved in developing some of the properties at issue. The trial court did not decide whether a state-law claim for contribution was available under the facts presented, but instead dismissed the case on the theory that *if* a state-law cause of action existed, it was preempted by federal law. The Tenth District Court of Appeals affirmed, and the developer appealed the preemption issue to this court.

{¶ 2} Before we can get to the merits of the preemption issue, we must first determine whether it is appropriate for us to decide the issue at all. Several related principles of judicial restraint are at play here. First, no party in this case has ever asked for federal preemption, and courts ordinarily do not decide cases on issues that have not been raised by the parties. Second, preemption is a constitutional issue, and under a principle of constitutional avoidance courts do not decide constitutional questions unless it is necessary to do so. Third, the question presented is a purely hypothetical one: If a state-law cause of action exists, would it be preempted by federal law? Courts generally avoid answering hypothetical questions.

{¶ 3} Applying these principles, we conclude that the trial court erred in deciding this case on the basis of federal preemption—as did the court of appeals. Rather than repeat this mistake, we determine that the best course is to reverse the

decisions below and remand the matter for the trial court to consider, in the first instance, whether the facts alleged present a claim for relief under Ohio law.

### *How We Got Here*

{¶ 4} Epcon Communities Franchising, L.L.C. ("Epcon") is a developer and franchisor of residential homes for community-development projects. In 2019, the Department of Justice filed a complaint against Epcon alleging violations of the FHA in the development of several Ohio properties. The complaint was resolved through a consent order under which Epcon agreed to pay more than $2.5 million.

{¶ 5} Some of the properties at issue in the FHA lawsuit were developed directly by Epcon, while others were developed by franchisees under agreements with Epcon. Among these franchisees was the Wilcox Development Group, L.L.C., and its affiliates Charleston Lake II, L.L.C., and Streetsboro Investment Partners, L.L.C. (collectively, "Wilcox").

{¶ 6} In January 2021, Epcon sued Wilcox with an aim to recoup some of the funds that it had paid to resolve the FHA claims. Epcon sought to recover under Ohio's contribution statute, R.C. 2307.25(A), which provides that

> if one or more persons are jointly and severally liable in tort for the same injury or loss to person or property or for the same wrongful death, there may be a right of contribution even though judgment has not been recovered against all or any of them.

{¶ 7} Epcon alleged that under its agreements with its franchisees, each franchisee is solely responsible for numerous aspects of design and construction—including ensuring that properties comply with the FHA and other laws. Epcon alleged that Wilcox failed to comply with the FHA in its construction and design of certain properties.

**{¶ 8}** Wilcox filed a motion to dismiss under Civ.R. 12(B)(6), asserting that no claim for contribution was available under Ohio law because Epcon had not alleged the commission of a tort and because Epcon had not alleged a "single, indivisible injury." *See* R.C. 2307.25(A) (allowing a claim for contribution "if one or more persons are jointly and severally liable in tort for the same injury or loss"). In the alternative, Wilcox argued that "although [Epcon did] not include[] a claim for contribution under the Fair Housing Act itself, even if it tried to salvage its amended complaint on that basis, federal courts hold there is no right to contribution under the Fair Housing Act." Nowhere in its briefs in support of its motion to dismiss did Wilcox raise federal preemption.

**{¶ 9}** Epcon opposed the motion, contending that the facts alleged in its amended complaint were sufficient to state a cause of action for contribution under Ohio law. It argued that claims under the FHA are tort claims and that the design and construction of housing communities in violation of the FHA constitute a single, indivisible injury. Epcon further explained that Wilcox's alternative argument about the unavailability of a federal contribution claim under the FHA was irrelevant because Epcon was not asserting a federal claim for contribution.

**{¶ 10}** The trial court granted Wilcox's motion to dismiss, but not for the reasons advanced by Wilcox. The court declined to consider Wilcox's first two arguments: that Epcon had failed to state a contribution claim under Ohio law because it had not alleged the commission of a tort and because it had not alleged a "single, indivisible injury." *Epcon Community Franchising, L.L.C. v. Wilcox Dev. Group, L.L.C.*, Franklin C.P. No. 21 CV 0502, 4 (Dec. 9, 2021). Instead, it dismissed the complaint on the basis that the FHA preempts a claim for contribution under R.C. 2307.25(A). *Id.* While its decision stated that it was addressing Wilcox's argument about the lack of a federal right of contribution under the FHA, the trial court grounded its analysis in preemption principles. It cited a federal court's decision in *Miami Valley Fair Hous. Ctr., Inc. v. Campus Village Wright*

*State, L.L.C.*, 2012 U.S. Dist. LEXIS 137922 (S.D.Ohio Sept. 26, 2012), to support its holding that "allowing these state law remedies [of indemnification and contribution] would interfere with the methods the FHA uses to achieve its goal and, as such, the state law claims are preempted." Franklin C.P. No. 21 CV 0502, 5 (Dec. 9, 2021). And the trial court concluded that "[b]ecause allowing the state-law claim would interfere with Congress' goal, Epcon's state-law claim for contribution is barred." *Id.* at 6.

{¶ 11} Epcon appealed the trial court's judgment to the Tenth District, asserting that the trial court erred in dismissing Epcon's amended complaint on the basis that its state-law contribution claim was preempted by the FHA. Epcon presented two issues in its appeal. First, it argued that the trial court erred in dismissing Epcon's complaint based on a reason not raised in Wilcox's motion to dismiss and without notice to Epcon. And second, Epcon argued that the trial court erred in its preemption analysis.

{¶ 12} In response, Wilcox again disclaimed any reliance on preemption and instead asked the court of appeals to affirm the trial court's judgment based on the arguments it had raised in the trial court. Nevertheless, the court of appeals determined that Epcon's contribution claim was preempted by the FHA, affirming the judgment of the trial court. 2022-Ohio-3442, ¶ 17-18 (10th Dist.).

{¶ 13} Epcon sought review of one proposition of law: "R.C. 2307.25 is not preempted by the Fair Housing Act." We agreed to review the appeal. 2023-Ohio-212. In its briefing to this court, Epcon argues that the trial and appellate court erred in concluding that a state-law contribution claim is preempted by federal law. Wilcox counters by pointing out that it has never asked for federal preemption. It asks that, instead of adopting the holding below, we affirm the judgment on the alternative basis that Epcon's amended complaint failed to state a cause of action for contribution under Ohio law.

### *Principles of Judicial Restraint Preclude Us From Reaching the Preemption Issue*

{¶ 14} This case comes to us in a strange posture. We are being asked to address a hypothetical question about the availability of federal preemption even though no party in this case has ever advocated for federal preemption. And we are being asked to decide a constitutional question about federal preemption even though it is far from clear that there is any need to reach the constitutional issue at all. Several principles of judicial restraint caution against us doing so.

{¶ 15} First, our judicial system relies on the principle of party presentation, and courts should ordinarily decide cases based on issues raised by the parties. *See Greenlaw v. United States*, 554 U.S. 237, 243 (2008). Under this principle, "we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Id.* Through three levels of this case—at the trial court, at the court of appeals, and here—neither party has ever argued for preemption.

{¶ 16} Nowhere in its briefing in the trial court in support of its motion to dismiss did Wilcox even mention federal preemption; rather, it argued that the facts do not give rise to a state-law contribution claim. The appropriate thing for the trial court to have done would have been to decide the threshold issue of whether the facts asserted stated a claim for contribution under R.C. 2307.25(A). But instead, the trial court dismissed the case on the basis that any state-law contribution claim would be preempted by federal law, even though Wilcox had not asked it to do so. This was a misstep.

{¶ 17} In deciding the preemption issue, the trial court not only ran afoul of the party-presentment rule but also violated another principle of judicial restraint: the rule that courts should not decide constitutional questions unless it is absolutely necessary to do so. It is a long-standing principle that "[c]onstitutional judgments . . . are justified only out of the necessity of adjudicating rights in particular cases."

6

*Broadrick v. Oklahoma*, 413 U.S. 601, 611 (1973), citing *Marbury v. Madison*, 5 U.S. 137, 178 (1803). Indeed, "Ohio law abounds with precedent to the effect that constitutional issues should not be decided unless absolutely necessary." *Hall China Co. v. Pub. Util. Comm.*, 50 Ohio St.2d 206, 210 (1977); *see also State ex rel. Herbert v. Ferguson*, 142 Ohio St. 496 (1944), paragraph two of the syllabus ("Constitutional questions will not be decided until the necessity for a decision arises on the record before the court.").

{¶ 18} Preemption is an application of the Supremacy Clause of the United States Constitution, U.S. Const., art. VI, cl. 2. *See Gibbons v. Ogden*, 22 U.S. 1, 210-211 (1824). The clause "invalidates state laws that 'interfere with, or are contrary to,' federal law." *Hillsborough Cty., Florida v. Automated Med. Laboratories, Inc.*, 471 U.S. 707, 712 (1985), quoting *Gibbons* at 211. Because preemption is a constitutional issue, the trial court erred in deciding the case based on preemption without first deciding the threshold issue of whether a contribution claim was even available under Ohio law. *Compare Torres v. Precision Indus., Inc.*, 938 F.3d 752, 756-757 (6th Cir. 2019) (concluding that a district court erred by determining the constitutional issue of preemption before addressing the merits of a state-law claim).

{¶ 19} Both the party presentment and constitutional avoidance considerations apply with equal force in this court. We should not be deciding issues that have not been properly presented by the parties, and we should not be deciding constitutional questions unless it is necessary to do so. There is a third related principle of judicial restraint that is also at work here: the rule that courts should not issue advisory opinions or answer hypothetical questions.

{¶ 20} The only issue appealed to this court—and the only issue we accepted for review—was the preemption issue. Thus, we are asked to answer a purely hypothetical question: Assuming that a state-law contribution claim exists, would such a claim be preempted by federal law?

**{¶ 21}** We have long held that our role is "to decide actual controversies between parties legitimately affected by specific facts and to render judgments which can be carried into effect." *Fortner v. Thomas*, 22 Ohio St.2d 13, 14 (1970). Thus, it is outside our purview to decide "abstract, hypothetical or contingent questions." *Alabama State Fedn. of Labor v. McAdory*, 325 U.S. 450, 461 (1945). Here, there is no controversy about the preemption issue; the issue is purely hypothetical. Epcon asserts that preemption does not apply, and Wilcox does not dispute that assertion. Indeed, the only way preemption could possibly become an issue in this controversy is if a court first makes the threshold determination that Epcon has a valid claim for contribution under Ohio law.

**{¶ 22}** Thus, all three considerations—party presentment, constitutional avoidance, and the restrictions on answering hypothetical questions—lead us to the same place. We decline to answer the hypothetical, constitutional question presented in the proposition of law we accepted.

### *We Vacate the Judgments Below and Remand to the Trial Court*

**{¶ 23}** Having determined that the judgments below were issued in error and that we should not reach the hypothetical question we accepted for review, the question becomes our appropriate disposition of this matter. Wilcox asks us to affirm the judgments below on alternative grounds, primarily arguing that under the present set of facts, a cause of action for contribution is not available under Ohio law. We decline to do so.

**{¶ 24}** Because we did not accept the appeal on such a proposition of law, there has only been limited briefing on that issue in this court. We have often expressed the view that "justice is far better served when it has the benefit of briefing, arguing, and lower court consideration before making a final determination." *Sizemore v. Smith*, 6 Ohio St.3d 330, 333, fn. 2 (1983). Rather than decide the issue in the first instance, we reverse and vacate the judgments of the courts below and remand the case to the trial court for it to consider whether a

contribution claim is available to Epcon under R.C. 2307.25(A) and the other arguments for dismissal asserted below.

Judgment reversed<br>and cause remanded to the trial court.

_____

**BRUNNER, J., concurring in judgment only.**

**{¶ 25}** Plaintiff-appellant, Epcon Communities Franchising, L.L.C., filed this action against defendants-appellees, Wilcox Development Group, L.L.C., Charleston Lake II, L.L.C., and Streetsboro Investment Partners, L.L.C. (collectively, "Wilcox"), asserting one claim for contribution under R.C. 2307.25(A). The Franklin County Court of Common Pleas held that the claim was preempted by the Fair Housing Act ("the FHA"), 42 U.S.C. 3601 et seq., and the Tenth District Court of Appeals affirmed. Epcon then asked us to review one proposition of law focused squarely on whether the FHA preempts a contribution claim under R.C. 2307.25(A). This court voted unanimously to accept the case. The parties submitted briefs on the issue, and at oral argument, we focused on the preemption arguments that the parties had raised in their briefs.

**{¶ 26}** Now the majority holds that the trial and appellate courts erred by deciding whether the preemption doctrine applies before determining whether Epcon had even stated a claim for contribution. In support, it states that the trial and appellate courts violated the principle of party presentation because "[t]hrough three levels of this case—at the trial court, at the court of appeals, and here—neither party has ever argued for preemption." Majority opinion, ¶ 15. That statement is wrong.

**{¶ 27}** At the trial-court level, Wilcox argued—albeit in its reply in support of its motion to dismiss—that the FHA affirmatively "bars claims for contribution (or indemnity) *regardless of whether parties assert that the right arises under the FHA itself or independently under state law*." (Emphasis in original.) In support,

it cited a series of cases holding that the FHA preempts state-law claims for contribution. That likely explains why the trial court issued a decision based on preemption. On appeal to the Tenth District, Epcon argued that the trial court erred by relying on preemption principles when it did not have the chance to brief that issue. It also contended that the trial court's preemption analysis was wrong. The appellate court rejected the latter argument and did not address the former. Epcon then raised—and we unanimously agreed to review—a single proposition of law focused on the preemption issue. While the history of this case is not ideal, the foregoing shows that the majority's invocation of the party-presentation principle strays from the record before us.

{¶ 28} The majority also contends that the trial and appellate courts improperly addressed a hypothetical question and that to address that question here would be particularly improper because the question is constitutional in nature. The problem with these concerns, however, is that Epcon could have raised them in a separate proposition but chose not to do so, thus forfeiting any argument along these lines. These concerns also could have provided this court with a reason to decline jurisdiction. Indeed, no justice cast such a vote.

{¶ 29} In the end, we are left with trial- and appellate-court decisions squarely focused on the issue whether the FHA preempts a state-law claim for contribution. The parties' dispute involves issues of law only, and those issues have been fully briefed. I would therefore address the merits of the preemption issue. And for the reasons detailed below, I would reverse the court of appeals' judgment. I therefore concur in judgment only.

## I. BACKGROUND

{¶ 30} The FHA prohibits discrimination in the sale or rental of housing. *See* 42 U.S.C. 3601 et seq. Among other things, the FHA makes it unlawful to "discriminate in the sale or rental . . . [of] a dwelling to any buyer or renter because of a handicap of . . . that buyer or renter," 42 U.S.C. 3604(f)(1)(A), and to

"discriminate against any person in the terms, conditions, or privileges of [the] sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of . . . that person," 42 U.S.C. 3604(f)(2)(A). Discrimination includes "a failure to design and construct" certain multifamily dwellings to include several specified accessibility features to make them accessible to people with disabilities. 42 U.S.C. 3604(f)(3)(C).

{¶ 31} Epcon is a franchisor of residential homes for community-development projects.[1] It licenses to others the right to use its proprietary "Development System," which includes copyrighted prototype architectural plans along with guidelines concerning the exterior portions of each development. In 2011 and 2012, two complaints were filed with the United States Department of Housing and Urban Development ("HUD"), in which Epcon was alleged to have violated accessibility provisions of the FHA at five multifamily properties in Ohio. Eventually, HUD referred the matter to the United States Department of Justice ("the DOJ").

{¶ 32} In October 2019, the DOJ filed a complaint against Epcon in the United States District Court for the Southern District of Ohio. *See United States v. Epcon Communities, L.L.C.*, No. 2:19-cv-04601 (S.D. Ohio). In the complaint, the DOJ identified 32 properties in Ohio that were developed by Epcon and it alleged that each property contained features that violate the accessibility provisions of the FHA. Epcon developed 11 of those properties directly and developed 21 of those properties through agreements with franchisees.

{¶ 33} About five months after the DOJ initiated its action against Epcon, Epcon and the DOJ jointly asked the federal district court to approve a consent order that would resolve the DOJ's claims. Under the consent order, Epcon agreed to pay more than $2,500,000 to resolve the claims. Most of that amount—

---

1. The facts stated here are taken from Epcon's amended complaint.

$2,200,000—would pay for modifications to the 32 properties to address the FHA violations asserted by the DOJ. As part of the consent order, however, Epcon denied all of the factual allegations made by the DOJ in the complaint and in the consent order; it also denied that it had violated the FHA or any other federal, state, or local laws concerning discrimination. Epcon agreed to the consent decree "solely to avoid the time and significant cost of litigation." The DOJ, in turn, agreed to the following broad release provision:

> The United States hereby releases any and all claims and covenants and agrees that it will forever refrain from instituting, maintaining, prosecuting, or continuing to maintain or prosecute any suit or action or proceeding under the FHA pertaining to the design and construction of the [properties at issue] against [Epcon] and [Epcon's] parent entities, subsidiaries, franchisees and affiliates.

*Epcon Communities*, No. 2:19-cv-04601 (S.D.Ohio Mar. 25, 2020). The court approved the consent order on March 25, 2020.

{¶ 34} Wilcox is a franchisee of Epcon. It developed three of the properties at issue in the FHA action resolved by the consent order. In January 2021, Epcon initiated the present action against Wilcox in the Franklin County Court of Common Pleas. It asserted one claim for contribution under R.C. 2307.25(A), which provides:

> Except as otherwise provided in sections 2307.25 to 2307.28 of the Revised Code, if one or more persons are jointly and severally liable in tort for the same injury or loss to person or property or for the same wrongful death, there may be a right of contribution even though judgment has not been recovered against all or any of them.

> The right of contribution exists only in favor of a tortfeasor who has paid more than that tortfeasor's proportionate share of the common liability, and that tortfeasor's total recovery is limited to the amount paid by that tortfeasor in excess of that tortfeasor's proportionate share. No tortfeasor may be compelled to make contribution beyond that tortfeasor's own proportionate share of the common liability.

**{¶ 35}** In an amended complaint, Epcon alleged that Wilcox shares liability for the alleged FHA violations that it settled with the DOJ. Epcon alleged that under its agreements with its franchisees, each franchisee is solely responsible for numerous aspects of design and construction, including the hiring of its own architect and other consultants, and for ensuring that properties ultimately comply with the FHA and other laws. Epcon then alleged that Wilcox participated in the process of designing and constructing the three properties at issue in the case and, as a result, was required to comply with the FHA. But, Epcon continued, Wilcox failed to do so and instead constructed communities that do not comply with the FHA. As a result, Epcon claimed that Wilcox was obligated to reimburse it a portion of the amount Epcon owes under the consent order in the federal case.

**{¶ 36}** Wilcox filed a motion to dismiss under Civ.R. 12(B)(6), arguing that Epcon failed to state a claim for contribution under R.C. 2307.25 because Epcon had not alleged the commission of a "tort" or the existence of a single, indivisible injury, both of which must be shown to recover under the statute. In the alternative, Wilcox argued that "although [Epcon did] not include[] a claim for contribution under the Fair Housing Act itself, even if it tried to salvage its Amended Complaint on that basis, federal courts hold there is no right to contribution under the Fair Housing Act."

**{¶ 37}** Epcon opposed the motion. Among other things, it explained that it was not claiming that the FHA created a right to contribution but that it was asserting a state-law-based right to contribution created by R.C. 2307.25(A).

**{¶ 38}** The common pleas court granted Wilcox's motion, concluding that the FHA preempts a claim for contribution under R.C. 2307.25(A). It held:

> [Epcon's] complaint is predicated on and seeks to recover the cost of retrofitting certain deficiencies at the communities worked on by [Wilcox] as required by the consent order that it negotiated. If not for the consent decree it signed with the FHA, Epcon would not have filed this suit. Allowing Epcon to seek contribution from [Wilcox] would effectively partially insulate it from liability. Moreover, none of the allegations are based on the particular terms of the contract between Epcon and [Wilcox] nor any claim for breaching a duty of care. Because allowing the state-law claim would interfere with Congress' goal, Epcon' s state-law claim for contribution is barred.

Franklin C.P. No. 21 CV 0502 (Dec. 9, 2021). The common pleas court accordingly dismissed Epcon's suit for failure to state a claim.

**{¶ 39}** Epcon appealed the dismissal to the Tenth District, which affirmed. The Tenth District concluded that Epcon's contribution claim was barred by a form of preemption known as obstacle preemption, 2022-Ohio-3442, ¶ 14 (10th Dist.), which occurs when "state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' " *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990), quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).

**{¶ 40}** In the Tenth District's view, "a state law claim for contribution is an obstacle to the full purposes and objectives of Congress in the passage of the FHA." 2022-Ohio-3442 at ¶ 15 (10th Dist.). The appellate court reasoned that such a claim

14

"circumvents the judgment of the federal government in choosing who to prosecute for violations of the FHA, and it permits a violator to shift at least some of the responsibility for the violation to another party." The Tenth District reasoned:

> If the DOJ, HUD, and/or the Office of Fair Housing and Opportunity had wanted to hold Wilcox responsible for any alleged violations of the FHA, Wilcox would have been named as a defendant in the original complaint. It could not have been unknown to the federal plaintiffs that Wilcox was a franchisee of Epcon, and thus was directly involved in developing the three communities at issue in this case. But for reasons known only to the federal plaintiffs, the decision was made not to name Wilcox in the complaint. For Epcon to now be able to engage in an end-run around the FHA—which all parties acknowledge and concede does not provide for a right of contribution—by turning to state law would very much frustrate the purposes and objectives of the FHA.
>
> In short, if Congress had wanted to provide for a right of contribution for violations of the FHA, it would have included such a right as a provision in the FHA itself—yet it did not. Therefore, based on the foregoing reasoning, we find that the FHA preempts state law claims for contribution, including Ohio's statutorily provided cause of action for contribution set forth in R.C. 2307.25, and we find that Epcon's claim for contribution is barred as a matter of law.

*Id.* at ¶ 15-16.

{¶ 41} Epcon sought review of one proposition of law: that "R.C. 2307.25 is not preempted by the Fair Housing Act." We agreed to review its appeal. 2023-Ohio-212.

## II. ANALYSIS

{¶ 42} Epcon's proposition of law presents a question of law regarding the interpretation of a statute, for which de novo review of the lower court's decision is necessary and proper. *See State v. Vanzandt*, 2015-Ohio-236, ¶ 6.

### A. Background on preemption

{¶ 43} The Supremacy Clause of the United States Constitution provides that "the Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. The federal preemption doctrine is an application of the Supremacy Clause; generally speaking, when a state law conflicts with a federal law, the Supremacy Clause guarantees that the federal law preempts that state law and therefore controls.

{¶ 44} A federal law may preempt state law expressly or implicitly. Express preemption is found when Congress explicitly defines "the extent to which its enactments pre-empt state law." *English*, 496 U.S. at 78. Implied preemption, by contrast, has been recognized in several different forms. Relevant here is a form of conflict preemption known as obstacle preemption, which, as noted above, occurs when "state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Id.*, quoting *Hines*, 312 U.S. at 67.

{¶ 45} The United States Supreme Court has made clear that in any preemption analysis, "'[t]he purpose of Congress is the ultimate touchstone.' " *Malone v. White Motor Corp.*, 435 U.S. 497, 504 (1978), quoting *Retail Clerks Internatl. Assn. v. Schermerhorn*, 375 U.S. 96, 103 (1963). It has also instructed that

16

> Congress' intent, of course, primarily is discerned from the language of the pre-emption statute and the "statutory framework" surrounding it. *Gade* [*v. Natl. Solid Wastes Mgt. Assn.*, 505 U.S. 88, 111 (1992)] (Kennedy, J., concurring in part and concurring in judgment). Also relevant, however, is the "structure and purpose of the statute as a whole," [*id.* at 98,] as revealed not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law.

*Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486 (1996). In addition, "in all preemption cases," courts must start with "the presumption against preemption." *Girard v. Youngstown Belt Ry. Co.*, 2012-Ohio-5370, ¶ 15. The party seeking to overcome this presumption "bears a heavy burden," and must show that preemption is "the clear and manifest purpose of Congress." *Id.* "'[A] high threshold must be met if a state law is to be preempted for conflicting with the purposes of a federal Act.'" *Chamber of Commerce of the United States v. Whiting*, 563 U.S. 582, 607 (2011), quoting *Gade* at 110 (Kennedy, J., concurring in part and concurring in judgment).

{¶ 46} The United States Supreme Court has designated obstacle preemption as a basis for federal preemption of state law in some situations. One such situation is when Congress intends to adopt a uniform system of federal regulation and a state law frustrates that intent. *See Crosby v. Natl. Foreign Trade Council*, 530 U.S. 363 (2000). In *Crosby*, the United States Supreme Court found that a Massachusetts law barring state entities from buying goods or services from certain persons or entities with or in the country of Burma (now, Myanmar) stood as an obstacle to a Congressional enactment imposing sanctions on Burma. *Id.* at 366-368. Although a corporation could, in theory, comply with both the state

17

and federal laws, the Supreme Court held that the Massachusetts state statute "undermine[d] the intended purpose and 'natural effect' of at least three provisions of the federal Act." *Id.* at 373. First, the state law undermined Congress's decision to give the President discretion to control economic sanctions against Burma, because it would make it "impossible for [the President] to restrain fully the coercive power of the national economy when he may choose to take the discretionary action open to him." *Id.* at 377. "Quite simply, if the Massachusetts law is enforceable the President has less to offer and less economic and diplomatic leverage as a consequence." *Id.* Second, the federal law limited sanctions to specific persons and conduct, which reflected a "federal decision about the right degree of pressure to employ"; by targeting a different set of entities, the state law "undermine[d] the congressional calibration of force." *Id.* at 380. Finally, the federal law in question directed the President to develop "'a comprehensive, multilateral strategy to bring democracy to and improve human rights practices and the quality of life in Burma.'" *Id.* at 369, quoting Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997, Section 570(c), 110 Stat. 3009-166 to 3009-167. The Massachusetts law was "at odds with the President's intended authority to speak for the United States among the world's nations in developing" this strategy. *Id.* at 380. The high court held that the Massachusetts law was preempted by the federal statute. *Id.* at 388.

{¶ 47} The United States Supreme Court has also ruled that obstacle preemption occurs when Congress intends to create a regulatory ceiling for certain products or activities and a state law imposes stricter regulations. *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861 (2000). In *Geier*, the Court held that a federal motor-vehicle-safety law requiring car manufacturers to equip some, but not all, of their cars with passive restraints preempted state tort claims that alleged that a car manufacturer negligently designed a car without a driver's-side airbag. *Id.* at 881. The Court reasoned that the federal law reflected an intent to provide manufacturers

18

with a "range of choices" when introducing passive-restraint devices over time to lower costs and encourage the development and widespread acceptance of passive restraints. *Id.* at 875. But the state tort claim would have required more regulations, such that a manufacturer would have had to include airbags, rather than the passive-restraint systems required under federal law. *Id.* at 881. The state law also would have required airbags to be included in an entire fleet of cars by a certain year, rather than in an increasing portion of the fleet over a number of years. *Id.* The state tort claim therefore stood as an obstacle to Congress's goal of providing manufacturers with a "variety and mix of devices" they could introduce gradually over time. *Id.*

{¶ 48} Finally, the United States Supreme Court has found obstacle preemption when a state law would impede the vindication of a federal right. *See Felder v. Casey*, 487 U.S. 131 (1988). In *Felder*, the Court considered a state law that imposed procedural rules on persons seeking to assert a federal civil-rights claim under Section 1 of the Ku Klux Klan Act, 42 U.S.C. 1983. Among other things, the state law provided that any person seeking to bring a claim under 42 U.S.C. 1983 must, within 120 days of the alleged injury, provide the State with written notice and an itemized statement of the relief sought. *Id.* at 134. The person was then required to give the State 120 days to respond before filing suit. *Id.* In its preemption analysis, the Court observed that the objective of 42 U.S.C. 1983 was "to provide compensatory relief to those deprived of their federal rights by state actors." *Id.* at 141. It held that the state law imposed conditions on the federal right to recovery "for a reason manifestly inconsistent with the purposes of the federal statute: to minimize governmental liability." *Id.* The state law also discriminated against the individually held federal right because it gave the claimant far less time to bring an action under 42 U.S.C. 1983 than the State provided for a claim of intentional tort. *Id.* at 141-142. Finally, the state law's added procedural provisions for a remedy operated as an added-on exhaustion-of-remedies requirement.

Rejecting this, the Court stated, "Congress never intended that those injured by governmental wrongdoers could be required, as a condition of recovery, to submit their claims to the government responsible for their injuries." *Id.* at 142.

### B. The FHA does not preempt contribution claims under R.C. 2307.25

{¶ 49} Epcon argues that by not applying obstacle preemption to its efforts to seek contribution from Wilcox for its settlement with the DOJ, the Tenth District failed to recognize and apply the presumption against federal preemption. Epcon argues that the Tenth District turned this presumption on its head by holding that absent an express right to contribution in the FHA, Congress must have intended for a person who violates the FHA to be unable to seek contribution. Epcon also explains that the purpose of the FHA is to provide for fair housing throughout the country and that to give effect to that purpose, all participants in the housing market must be held responsible for violations of the FHA. Epcon states that its aim in this appeal is to use a state-law cause of action that is fully consistent with the purpose of the FHA to hold Wilcox liable for its own FHA violations.

{¶ 50} In response, Wilcox primarily argues that this court can resolve this appeal without addressing whether a contribution claim under R.C. 2307.25 conflicts with the FHA. According to Wilcox, this court should first determine whether Epcon has a state-law right under R.C. 2307.25 and only if it does should we reach the question whether the claim conflicts with and is subject to preemption by the FHA. Wilcox cites R.C. 2307.25(A), which applies when "one or more persons are jointly and severally liable in tort for the same injury or loss to person or property." According to Wilcox, a violation of the FHA is not a tort and thus, Epcon's claim against it cannot be based on joint and several liability for a single, indivisible injury in tort. Wilcox states that Epcon's pointing to alleged discrete violations of the FHA by Wilcox is not a basis for recovery for its own FHA violations. Consequently, Wilcox argues, we should hold that Epcon does not have

a viable claim for contribution under R.C. 2307.25 and this court need not address whether R.C. 2307.25 conflicts with the FHA.

{¶ 51} I do not agree with Wilcox that the analysis can be cut short in this fashion. The Tenth District based its decision on its conclusion that a claim under R.C. 2307.25 stands as an obstacle to—and is therefore preempted by—the FHA, and we accepted jurisdiction over a proposition of law squarely presenting that issue. I would decline Wilcox's request that we change the focus of this appeal and issue a decision based on preliminary issues not addressed by the Tenth District or by Epcon in its opening brief. I would therefore express no opinion on the merits of those issues. In particular, I would express no opinion about whether Epcon has stated a claim for contribution under R.C. 2307.25.

{¶ 52} Understanding the purpose of the FHA is the first step to reviewing the merits of Epcon's preemption argument. The FHA states that "[i]t is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. 3601. Given this, and as the United States Supreme Court has recognized, the "central purpose" of the FHA is "to eradicate discriminatory practices within a sector of the Nation's economy." *Texas Dept. of Hous. & Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 521 (2015).

{¶ 53} The FHA makes it unlawful to "otherwise make unavailable" any dwelling to any person "because of race, color, religion, sex, familial status, or national origin," 42 U.S.C. 3604(a), or "otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of" the buyer or renter or persons associated with either of them, 42 U.S.C. 3604(f). The term "otherwise make unavailable" is informative because it illustrates that the FHA "look[s] to consequences, not intent." *Inclusive Communities* at 534-535. "In other words, the FHA was not designed simply to punish those who discriminate, but also to remove even unintentional barriers to the availability of housing." *S & R Dev. Estates,*

*L.L.C. v. Greenburgh*, 336 F.Supp.3d 300, 310 (S.D.N.Y. 2018). Consistent with this reading, the FHA also provides for "'all participants in the [housing] process as a whole'" to be held responsible for fair-housing violations. *Barker v. Niles Bolton Assocs.*, 316 Fed.Appx. 933, 942 (11th Cir. 2009), quoting *Baltimore Neighborhoods, Inc. v. Rommel Builders, Inc.*, 3 F.Supp.2d 661 (D.Md. 1998).

**{¶ 54}** The FHA provides for enforcement of these provisions in administrative proceedings pursued by the HUD secretary and in civil actions initiated by private persons or the United States Attorney General. *See* 42 U.S.C. 3612 through 3614. Notably, however, the FHA does not indicate that these enforcement actions are intended to be the exclusive means of eradicating discriminatory housing practices. The FHA expressly contemplates that there is a role for enforcement actions brought under state fair-housing laws. States are permitted to impose requirements that "afford[] handicapped persons *greater* access than is required by" the FHA. (Emphasis added.) 42 U.S.C. 3604(f)(8). The FHA also makes clear that it does not "invalidate or limit" any state law protecting "the same rights" that are granted by the FHA, but it does invalidate any state law "that purports to require or permit any action that would be a discriminatory housing practice under" the FHA. 42 U.S.C. 3615.

**{¶ 55}** The FHA also seeks to eradicate housing discrimination through means outside of formal enforcement proceedings. For example, the FHA requires the HUD secretary to "cooperate with and render technical assistance to Federal, State, local, and other public or private agencies, organizations, and institutions which are formulating or carrying on programs to prevent or eliminate discriminatory housing practices." 42 U.S.C. 3608(e)(3). It also tasks the secretary with engaging in "educational and conciliatory activities as in his judgment will further the purposes" of the FHA. 42 U.S.C. 3609. These activities include "call[ing] conferences of persons in the housing industry and other interested parties to acquaint them with the provisions of [the FHA] and [the secretary's]

suggested means of implementing it." *Id.* And, further, the secretary shall endeavor with the advice of those persons and parties to "work out programs of voluntary compliance and of enforcement." *Id.*

{¶ 56} Finally, the FHA recognizes that in some situations, state or local enforcement will take place *instead of* federal enforcement. The FHA provides that the HUD secretary

> shall consult with State and local officials and other interested parties to learn the extent, if any, to which housing discrimination exists in their State or locality, and whether and how State or local enforcement programs might be utilized to combat such discrimination in connection with *or in place of*, the Secretary's enforcement of this subchapter.

(Emphasis added.) *Id.* It also allows the secretary to provide grants to "State or local governments or their agencies, public or private nonprofit organizations or institutions, or other public or private entities that are formulating or carrying out programs to prevent or eliminate discriminatory housing practices." 42 U.S.C. 3616a(a).

{¶ 57} These provisions do not render a claim for contribution under R.C. 2307.25 an obstacle to the purposes being furthered by the FHA. After "examining the federal statute as a whole and identifying its purpose and intended effects," *Crosby*, 530 U.S. at 373, I do not see the sort of congressional intent required to overcome the presumption against preemption. In other words, the state law does not act as an obstacle to application of the federal law.

{¶ 58} The FHA seeks to eradicate housing discrimination by utilizing a wide variety of resources in federal, state, and local governments, as well as through the actions of private entities. As such, federal-enforcement proceedings are not

the only means by which to pursue the goal of eradicating housing discrimination. Rather, the FHA expressly recognizes that state and local entities may enforce their own antidiscrimination regulations, including regulations stricter than those contained in the FHA, and the HUD secretary is required to cooperate and assist in those efforts. The FHA also clearly contemplates that eradicating housing discrimination will be accomplished not just through enforcement proceedings but also through *preventative* work. *See Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 601-602 (4th Cir. 2010) (explaining that the purpose of the FHA is to both prevent and remedy housing discrimination). The FHA requires the secretary to work with state and local entities to gather information on the extent to which housing discrimination exists in particular areas and to educate the public on its rights under antidiscrimination laws.

{¶ 59} Given the wide variety of resources that contribute to fulfilling the aims of the FHA, along with the wide variety of public and private activities for which federal resources are directed to carry out the FHA, I do not see Epcon's state-law claim for contribution as an obstacle to the FHA. Rather, it is one of many means that works in tandem with the FHA to help eradicate housing discrimination in the United States and is in line with the FHA's purposes and principles. Consistent with the goal of holding *all* FHA violators responsible, Epcon's state claim seeks to ensure that "common liability" is allocated "proportionately." *Compare Baker, Watts & Co. v. Miles & Stockbridge*, 876 F.2d 1101, 1107 (4th Cir. 1989) (holding that federal securities laws did not preempt a state-law claim for contribution when such a claim would "further the regulatory purposes of the federal securities laws by holding all violators to account"). Epcon's subsequent state-law claim for contribution under the FHA helps ensure that all violators of the FHA are held responsible.

{¶ 60} The Tenth District concluded that allowing a claim for contribution under state law "circumvents the judgment of the federal government in choosing

who to prosecute for violations of the FHA." 2022-Ohio-3442 at ¶ 15 (10th Dist.). But I do not see in the FHA any indication that Congress thought that the government's charging decision in a particular enforcement proceeding should be treated as the definitive decision concerning how to address discrimination in housing. In seeking to eradicate housing discrimination through a wide variety of means involving both public and private entities, the numerous provisions of the FHA envision state, local, and private entities making their own decisions concerning how to pursue the goals of the FHA. *See* 42 U.S.C. 3604(f)(8) (permitting state housing-discrimination laws with stricter requirements than federal law requires); 42 U.S.C. 3608(e)(3) (requiring the HUD secretary to "cooperate with and render technical assistance to" other entities—including at the state level—that are pursuing their own housing discrimination programs); 42 U.S.C. 3609 (requiring the secretary to "consult with State and local officials and other interested parties" concerning "whether and how State or local enforcement programs might be utilized to combat such discrimination in connection with *or in place of*, the secretary's enforcement" of the FHA [emphasis added]). A state-law contribution claim, as here, simply allows one violator to pursue other violators. It is therefore clearly consistent with the FHA's goal.

{¶ 61} Pointing to decisions from several other courts, the Tenth District also concluded that allowing a contribution claim under state law would "permit[] a violator to shift at least some of the responsibility for the violation to another party" and in this case would allow Epcon to "engage in an end-run around the FHA," which would "frustrate the purposes and objectives of the FHA." 2022-Ohio-3442 at ¶ 15 (10th Dist.). But there is an important difference between allowing an entity that violates the FHA to shift the *entire* cost of the violation to another entity and allowing a claim for *contribution* such as the one at issue here. In the former situation, the FHA violator is effectively seeking indemnification for its unlawful housing discrimination. Allowing indemnification for an FHA

violation would create an obstacle to the achievement of the FHA's goals because it would allow a violator to shift *all* responsibility to another entity and therefore "diminish[] its incentive to ensure compliance with discrimination laws," *Equal Rights Ctr.*, 602 F.3d at 604 (holding that the FHA preempts state-law indemnification claims because such claims would allow "an owner to completely insulate itself from liability for an [Americans with Disabilities Act ('ADA')] or FHA violation").

{¶ 62} Here, however, Epcon seeks only the allocation of the costs of its settlement with the DOJ according to each entity's proportionate share of the common liability. In other words, contribution simply guarantees that all entities that violate the FHA are held responsible for their conduct. This, as I noted above, *furthers* the purposes of the FHA. *See Los Angeles v. AECOM Servs., Inc.*, 854 F.3d 1149, 1156 (9th Cir. 2017) (holding that the plaintiff's claims for contribution were not preempted by the ADA because, unlike the indemnification claims in *Equal Rights Ctr.*, the plaintiffs sought to shift liability "only to the extent that [the other entity's] own actions [gave] rise to liability"); *see also Baker*, 876 F.2d at 1103 ("Indemnification, of course, involves shifting the entire loss from one wrongdoer to another; contribution requires each wrongdoer to pay his proportionate—or pro rata—share of the adverse judgment.").

{¶ 63} The cases the Tenth District relied on support this distinction. One case involved a restrictive covenant running with the property that allegedly violated the FHA. *See Greenburgh*, 336 F.Supp.3d at 307-311. In *Greenburgh*, the owner of the property subject to the covenant—a group of nuns—argued that in the event the covenant was deemed to violate the FHA, a state law entitled them to recover the monetary value of the covenant from the previous owner. *Id.* at 307. But the federal district court held that the state law was preempted by the FHA because it would enable the violator to shift the full cost of the violation to another party. *Id.* at 315. The federal district court also suggested, in dictum, that a claim

for *contribution* would not be preempted. *Id.* at 313 ("to whatever extent contribution or indemnification were even allowed, it would only make sense in a case involving contribution from co-defendants or third parties responsible in part for the violation").

{¶ 64} The Tenth District also relied on *Miami Valley Fair Hous. Ctr., Inc. v. Campus Village Wright State, L.L.C.*, 2012 WL 4473236 (S.D.Ohio Sept. 26, 2012). In that case, however, the federal district court concluded that the contribution claim being presented was preempted because it sought to "completely insulate [a violator of the FHA] from liability." *Id.* at *4. *See also Equal Rights Ctr.*, 602 F.3d at 604, fn. 2 (declining to consider "whether a state-law claim for contribution [was] preempted" by the FHA because the contribution claim being presented would shift the entire cost of the violation to another entity).[2]

{¶ 65} The Tenth District also concluded that "if Congress had wanted to provide for a right of contribution for violations of the FHA, it would have included such a right as a provision in the FHA itself—yet it did not." 2022-Ohio-3442 at ¶ 16 (10th Dist.). I agree with Epcon that the absence of such a provision in the FHA does not indicate that Congress intended to preempt state-law contribution claims. If anything, it supports the conclusion that the Tenth District should not have applied the presumption by assuming that contribution claims *are* preempted unless the FHA specifically indicates otherwise. This simply is not the law. *See Girard*, 2012-Ohio-5370, at ¶ 15 ("[State law] shall not be superseded by federal law unless that is shown to be the clear and manifest purpose of Congress").

---

2. In two of the cases the Tenth District relied on, the reviewing courts did not engage in any substantive analysis of whether the FHA preempts state contribution claims made under state law. *See United States v. Dawn Properties, Inc.*, 64 F.Supp.3d 955, 960 (S.D.Miss. 2014); *United States v. Murphy Dev., L.L.C.*, 2009 WL 3614829, *2 (M.D.Tenn. Oct. 27, 2009). In addition, the statements in *Dawn Properties* concerning preemption of contribution claims appear to be dictum, as the court expressly held that Mississippi law did not allow for third-party contribution claims, *Dawn Properties* at 960.

**{¶ 66}** Nor is the relationship between the FHA and R.C. 2307.25 apropos for finding obstacle preemption, as discussed above. Unlike the federal motor-vehicle-safety law in *Geier*, 529 U.S. 861, the FHA cannot be said to establish a regulatory ceiling for certain products or activities as part of an attempt to foster gradual change in an industry. *See, e.g.*, 42 U.S.C. 3604(f)(8) (permitting state housing-discrimination laws to impose stricter requirements than provided under the FHA). Rather, when a contribution claim is available and does not impact the relief provided to any victims, there is no impediment or obstacle to vindicating federal rights. *See Felder*, 487 U.S. 131.

**{¶ 67}** Finally, this case is not like the federal sanctions law that was at issue in *Crosby*, 530 U.S. 363, because the FHA does not reflect a congressional decision to create a ubiquitous system of federal regulation. For one thing, the FHA does not imbue federal decisionmakers with *exclusive* discretion to decide how to calibrate efforts to eradicate housing discrimination. And in fact, the FHA envisions just the opposite: the federal government is directed to pursue the goals of the FHA in part by cooperating with and assisting state- and local-government entities, as well as private entities. As such, a contribution claim is wholly consistent with the goals of the FHA.

**{¶ 68}** Accordingly, I would hold that a claim for contribution under R.C. 2307.25 does not "'stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,'" *English*, 496 U.S. at 79, quoting *Hines*, 312 U.S. at 67, and that it is not preempted by the FHA. I would therefore reverse the judgment of the Tenth District Court of Appeals. Because the majority expresses a rationale based on matters not sufficiently supported by the record, I respectfully concur in judgment only.

_____

Arnold & Clifford, L.L.P., Tiffany L. Carwile, and James E. Arnold, for appellant.

Zeiger, Tigges & Little, L.L.P., Marion H. Little Jr., and Matthew S. Zeiger, for appellees.

_____